[Crim. No. 2843. In Bank.—September 14, 1926.]

## THE PEOPLE, etc., Respondent, v. SYDNEY ADAMS, Appellant.

[1] CRIMINAL LAW—MURDER—FORM OF VERDICT—PUNISHMENT.—In a prosecution for murder, where the jury returned a verdict of murder of the first degree without exercising its discretion by fixing the punishment at confinement in the state prison for life, the court had no discretion in the matter of fixing the punishment, as the law prescribes the penalty, which is death.

[2] ID. — SUFFICIENCY OF EVIDENCE.—In this prosecution for murder it is held that the evidence against the defendant was so clear, convincing and overwhelming that the jury as rational beings could not have returned any other verdict than murder in the first degree.

[3] ID. — TESTIMONY OF PARTICULAR WITNESS—INSTRUCTIONS.—In a prosecution for murder there is no prejudicial error in refusing to instruct the jury as to the degree of consideration and the effect that should be given to the testimony of the defendant and otherwise calling special attention to his testimony, as it is well settled that it is proper to refuse instructions calling special attention to the testimony of the defendant or of any other witness.

[4] ID.—DEFENSES—ACCIDENT AND MISFORTUNE—INSTRUCTIONS.—In a prosecution for murder there was no error in failing or neglecting to instruct the jury that accident and misfortune are valid defenses, where no such defenses were interposed, but the defendant testified that the deceased accidentally shot herself and that he was in nowise responsible for the injury.

[5] ID.—IMPEACHMENT OF VERDICT—AFFIDAVITS.—In a prosecution for murder, an affidavit is not sufficient in substance to justify the court in granting a motion for a new trial, and the verdict cannot be impeached by it, where all that is averred in the affidavit is that one of the jurors after being dismissed from jury duty remarked to affiant that the jury agreed with what the prosecuting attorney said in his closing argument, without showing what was said by the prosecuting attorney, and that the juror further stated to affiant that all the jurors felt that the crime was due

1. See 13 Cal. Jur. 746.
3. See 8 Cal. Jur. 356.
4. See 14 R. C. L. 790.
5. See 8 Cal. Jur. 436.

to laxity in law enforcement and that the jury decided it must do something to stop young people from "committing such crimes."

[6] ID.—DEATH PENALTY—DISCRETION OF JURY.—In a prosecution for murder whether the jury should have relieved the appellant of the death penalty was a question entirely within its discretionary power and the supreme court has no right to review its reasonable exercise of discretion in capital cases.

(1) 30 C. J., p. 455, n. 77. (2) 30 C. J., p. 312, n. 42. (3) 16 C. J., p. 1039, n. 84. (4) 30 C. J., p. 393, n. 97, p. 394, n. 2. (5) 16 C. J., p. 1241, n. 24, p. 1351, n. 46. (6) 30 C. J., p. 440, n. 86.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order denying new trial. Arthur Keetch, Judge. Affirmed.

The facts are stated in the opinion of the court.

M. H. Broyles for Appellant.

U. S. Webb, Attorney-General, and John W. Maltman and James S. Howie, Deputies Attorney-General, for Respondent.

SEAWELL, J.—Appellant was accused by an information filed against him by the district attorney of the county of Los Angeles, August 28, 1925, with the crime of having, on August 2, 1925, murdered Annie Adams, who was shown by the evidence to have been his wife. [1] The jury returned a verdict of guilty of murder of the first degree without exercising its discretion by fixing the punishment at confinement in the state prison for life. Such a verdict in homicide cases, under the law of this state, leaves the court with no discretion in the matter of fixing the punishment, as the law prescribes the penalty, which is death. Such a penalty was, therefore, adjudged and imposed by the court in the instant case.

The appeal herein is taken from the judgment and the order denying appellant's motion for a new trial. The incriminatory facts leading up to, attending and following the murder are, briefly, these:

6. See 13 Cal. Jur. 745.

Appellant and his deceased wife had been living separate and apart for several months prior to Sunday, August 2, 1925. On the day last named the deceased left her apartment at 1234 East Twenty-first Street in the city of Los Angeles, and was visiting her husband's sister and husband, Mrs. Julia and Major T. Harris, who resided at 1129 East Twelfth Street. Other friends were also visiting the Harris family on this day. During the afternoon appellant entered the Harris home, where a small company of friends were gathered, but he had little to say and soon departed. He returned again in the early evening between 6 and 7 o'clock. He seemed to be in a belligerent frame of mind and, after entering the room where his sister (Mrs. Harris) and her husband, his deceased wife, and others were gathered, called his wife out of the room and spoke aside with her for a few moments. The wife, who seemed to fear him, was soon seen backing into the room where the others were gathered, calling upon Major T. Harris "to make Syd behave." Mr. Harris, sensing the situation, remonstrated with appellant, who kept his hand suspiciously at his hip pocket. He finally grappled him and a struggle ensued during which Harris took occasion to satisfy himself that appellant was armed with a revolver. He succeeded in ejecting him from his home and as appellant was leaving he exhibited a revolver in a threatening manner. Thereafter his wife went to her apartment at 1234 East Twenty-first Street and, at about 11 o'clock P. M., appellant called her to the telephone. A brief conversation followed. The wife immediately called up the police department and two officers afterward presented themselves at her apartment. They remained but a short time and very soon after they departed appellant appeared. He entered the house and, passing the door which led into the bedroom which Mrs. Cohen, the landlady, was occupying, spoke to her. Mrs. Cohen, who was in bed, heard voices issuing from the adjoining room occupied by appellant's wife immediately after he passed her door, but she was not able to hear what was said. Within a short time after appellant entered his wife's apartment Mrs. Cohen heard the sound of two pistol shots and heard Mrs. Adams scream twice. She then sprang from her bed and in going into Mrs. Adams' room she met her in a small narrow hall that connected the two rooms.

Mrs. Adams reached Mrs. Cohen's room where she fell upon the floor mortally wounded and soon thereafter expired. Mrs. Cohen testified that Adams was advancing upon his wife after he had shot her with the smoking pistol in his hand and with his eyes fixed upon her. Mrs. Cohen, as she puts it, was "pleading with him," and he commanded her to get out of his way. He then left the premises with his wife lying upon the floor in Mrs. Cohen's room. Two cartridge shells, which fitted appellant's revolver, were picked up after the shooting. These were automatically ejected from the pistol as the cartridges exploded. Appellant disappeared and was .not located until the night following the shooting, when he was found at his lodging-house. He had with him the same pistol, doubtless, that he had used the night before. Appellant afterward made a confession in which he gave with some particularities, the circumstances of the murder.

[2] The evidence against the defendant was so clear, convincing and overwhelming that the jury, as rational beings, could not have returned any other verdict than one of murder of the first degree. In fact, every avenue of escape was foreclosed against him and as a last resort he interposed the defense that his wife shot herself accidentally while attempting to hand ·him his pistol. He did not, however, attempt to explain the second shot. His explanation as to the manner in which his wife shot herself proves its own absurdities. He testified that he was unarmed when he entered his wife's apartment; that as he was taking his leave she reminded him that she had previously taken his revolver and wished to return it to him. She got it from beneath the pillows or between the mattress and in attempting to hand it to him it struck against some piece of furniture and was discharged. It then fell from her hand to the floor and as he picked it up it was discharged the second time. One bullet entered his wife's right side, pierced both lungs and came out at a point on the left side. Appellant did not attempt to assist his wife in any way after she was shot, but fled from the premises. He made no inquiry as to whether she was dead or alive.

Complaint.is made to the admission of the confession prior to proof made of the *corpus delicti.* Without the confession at all the proof was amply sufficient to establish both the *corpus delicti* and the guilt of the appellant. Witness

Green, by whom the confession was established, was the People's last witness. In the order of proof the *corpus delicti* had been proved some time before witness Green was called.

[3] Complaint is also made that prejudicial error was committed by the court in refusing to instruct the jury as to the degree of consideration and the effect that should be given to the testimony of the defendant and otherwise calling special attention to his testimony. The law is so well settled to the effect that it is proper to refuse instructions calling special attention to the testimony of a defendant, or any other witness, that it is no longer necessary to cite authorities to sustain the court's refusal in the instant case.

[4] Appellant also assigns as error the failure or neglect of the court to instruct the jury that accident and misfortune are valid defenses. There were no such defenses interposed in this case. The appellant testified, and counsel here contends, that Mrs. Adams accidentally shot herself and that appellant was in nowise responsible for the injury. Had the appellant admitted that he shot and killed his wife by accident or misfortune or that he in any way contributed to her death there would be some merit in his claim that an instruction as to what constitutes excusable homicide should have been given (sec. 195, Pen. Code). We have no such question before us.

[5] There is no merit in the attempt by affidavit to impeach the verdict of the jury. First, the affidavit is not sufficient in substance to justify the court in granting the motion for a new trial, and, second, the verdict of a jury cannot be impeached in the manner here attempted. All that is averred in the impeaching affidavit is that one of the jurors after being dismissed from jury duty remarked to affiant that the jury agreed with what the prosecuting attorney said in his closing argument without stating what was said by the prosecuting attorney. Nor do the isolated averments that the juror further said to affiant that all the jurors felt that the crime was due to laxity in law enforcement and that the jury decided that it must do something to stop young people from "committing such crimes," tend to impeach the verdict. One of the purposes of punishment is to deter others from committing crime. Many persons,

too, and with considerable show of reason, believe that laxity in law enforcement tends to encourage lawlessness.

We have examined the entire record and find no reversible error in it.

[6] Whether the jury should have relieved the appellant of the death penalty was a question entirely within its discretionary power and we as a court have no right to review its reasonable exercise of discretion in capital cases.

The judgment and order are affirmed.

Richards, J., Shenk, J., Curtis, J., and Waste, C. J., concurred.

Rehearing denied.