[Crim. No. 4501. In Bank. Sept. 30, 1943.]

THE PEOPLE, Respondent, v. FARRINGTON GRAHAM HILL, Appellant.

No appearance for Appellant.

Robert W. Kenny, Attorney General, and Gilbert F. Nelson, Deputy Attorney General, for Respondent.

THE COURT.—The Grand Jury of Los Angeles County returned an indictment charging defendant with murder and with nine counts of robbery. Later, the indictment was amended to charge three prior felony convictions. Upon arraignment defendant entered pleas of not guilty and not guilty by reason of insanity to each of the several charges. He admitted the prior convictions. Subsequently, defendant withdrew his dual pleas to counts one, two, and ten, and entered pleas of guilty thereto. Evidence was thereupon taken to assist the court in fixing the degree of the crimes charged in those three counts. The murder, perpetrated in the commission of the robbery charged in count two, was found to be

of the first degree. The robberies charged in counts two and ten, to which defendant also pleaded guilty, were likewise found to be of the first degree. The trial court imposed the death penalty for the homicide and the cause is before us on an automatic appeal.

The evidence adduced upon the arraignment for judgment and sentence unfolds a sordid story reaching back into defendant's early youth. Defendant testified that his career of crime started when he was ten years of age at which time he was arrested for the theft of a bicycle. Thereafter his infractions of the law were periodic in occurrence and included theft, burglary, robbery, possession of weapons, jail breaking, and, finally, the series of robberies and the murder here charged.

Defendant further testified that early on the morning of July 19, 1942, he entered the lobby of the Garden of Allah Hotel, in Hollywood, with the intention of committing robbery. He approached the desk clerk, Carl Aldinger, and asked for change for a five-dollar bill. As the clerk was counting out the money defendant produced a .32 caliber Smith and Wesson revolver and "demanded that he hand over the cash." Defendant further testified, "At this time I thought I heard somebody coming through the lobby and also noticed that the desk clerk was looking at me suspiciously. I became frightened and fired four shots at the man, after which I turned and ran from the hotel. . . . All I got from this robbery was the . . . $3.00 which the clerk had counted out. The next morning I read in the newspaper that the man had died instantly. This is the first time I ever fired a shot at any person and I had no intention whatsoever of killing or harming the man. I fired because I believed the man was getting a gun to shoot me." It is for the murder of Aldinger that defendant has been sentenced to suffer the death penalty.

When on the witness stand defendant freely narrated the details of other robberies in and about Los Angeles during this period, stating that "In all of the above mentioned robberies my motive was money." At or about the time of the commission of these several robberies defendant discovered that the Federal Bureau of Investigation was investigating his draft status, whereupon he left this state and went to Las Vegas, Nevada, arriving there on August 22, 1942, a little more than a month after the murder of Aldinger. He testified herein that on the day following his arrival there he

attempted a holdup of the "Frontier Club" in Las Vegas and when the cashier "reached underneath for what I believed to be a gun. . . . I fired three shots. I saw [the cashier] fall to the floor and . . . I ran from the club. . . ." This victim also died.

Defendant was apprehended in his hotel shortly after the Las Vegas shooting. He freely admitted to Nevada and federal officers his many crimes and the two homicides. Upon his return to this state defendant admitted the commission of the hotel robbery and homicide as well as his many other crimes. Police officers testified as to defendant's voluntary admission of the several crimes. A ballistic expert testified that the bullets which killed the hotel clerk were fired from the pistol found in defendant's possession upon his arrest in Las Vegas. There is, therefore, evidence other than defendant's own admissions and testimony tending to connect him with the homicide perpetrated in Los Angeles County.

Defendant offered the explanation that he had resorted to crime only after he had indulged in intoxicants. Other than defendant's own statement that he had been drinking, the record fails to disclose any evidence of intoxication at the time he shot and killed Aldinger. Moreover, it is settled that voluntary intoxication is neither an excuse for nor a defense to crime.

There is evidence in the record that two of defendant's cousins had been confined for insanity and that his mother had been confined for a part of the year 1940 in the Camarillo State Hospital while suffering from a nervous breakdown and delusions of persecution. Three psychiatrists, appointed by the court to examine defendant upon his original plea, reported that he was sane at all times and was fully aware of the nature and character of his acts. It was stipulated that the court might consider their report in fixing the degree and sentence upon defendant's subsequent plea of guilty.

The murder having been committed in the perpetration of robbery was properly fixed as of the first degree (Pen. Code, sec. 189) and we may not disturb the determination of the trial court that the defendant should suffer the death penalty (Pen. Code, sec. 190).

The judgment is affirmed.