[Crim. No. 4754.   In Bank.   Jan. 31, 1947.]

THE PEOPLE, Respondent, v. JOE CAETANO, Appellant.

Blaine McGowan for Appellant.

Robert W. Kenny, Attorney General, and James O. Reavis, Deputy Attorney General, for Respondent.

GIBSON, C. J.—A jury found defendant guilty of murder of the first degree without recommendation, and later upon a trial of his plea that he was not guilty by reason of insanity found him to be sane. This is an automatic appeal from the judgment imposing the death penalty.

The homicide was the outgrowth of domestic difficulties that caused the parties to separate three times during their eleven years of married life. When they last separated, Mrs. Caetano withdrew their meager savings from the bank and a few days later, on March 8, 1946, she filed a suit for divorce demanding all of the community property. Defendant brooded over his marital troubles and was particularly upset by what he considered the unfair claims made by his wife to the little property they had accumulated. On Wednesday, April 24, 1946, defendant borrowed a 22 rifle from a friend, representing that he was going hunting. The next afternoon he walked into the grocery store where his wife worked as a clerk and raising the rifle ordered the persons present to stand aside. He said to his wife, "All right, you son of a bitch, you thought you was going to get everything, and you are not going to get a goddamn thing, and neither am I. I am going to shoot you." She answered, "Go ahead, see if I care." Defendant shot her through the heart and she died almost instantly. He then shot himself twice and a few minutes later was taken into custody and placed in a hospital. Two days later, defendant told the district attorney that when he borrowed the gun he had made up his mind to kill his wife and himself, and that he had the same intention when he went to bed on Wednesday night and when he got up the next morning. He said that when he "got off work" Thursday afternoon, he

decided that he was going to "get it over with" and that he went to the store with the intention of shooting his wife.

There can be no question that the evidence was sufficient to support the verdict on the general issue of guilt, but it is contended that the judgment should be reversed because of errors committed during the trial.

First, it is claimed that the court erred in giving an instruction which improperly assumed the commission of a homicide. In defining first degree murder, the court said in part: "You are instructed that the homicide in this case can be murder of the first degree, only if it is proven to have been deliberate and premeditated; and it is therefore necessary for you to know what is meant by the terms 'deliberate' and 'premeditated.'" Homicide is the killing of a human being by a human being and may be excusable, justifiable or felonious. It was established without dispute that defendant killed his wife, and he was, therefore, in no way prejudiced by the assumption in the instruction that a homicide had been committed. (*People* v. *Putman*, 129 Cal. 258, 262-263 [61 P. 961].)

Defendant next contends that it was not proved that Dr. Carl Wallace, who performed the autopsy, was a practicing physician at the time he examined decedent's body and that therefore the court erred in permitting the doctor to give his opinion of the cause of death. The doctor testified that he was a graduate of McGill University in Montreal, and that he was a practicing physician and surgeon in Humboldt County. He was not asked specifically on either direct or cross-examination concerning his professional status at the time the autopsy was performed. However, since the witness was a practicing physician at the time of the trial, which was less than two months after the homicide, it was not error to permit him to give an opinion as to the cause of death even though there was no specific proof of his professional status at the time he performed the autopsy.

It is also urged that it was error to permit the doctor to give his opinion as to the caliber of the bullet which he found in the body of the decedent. The gun used by defendant which the owner testified was a "22 . . . long pump rifle," and the bullet found in the decedent's body, were introduced in evidence. The witness, holding the bullet in his hand while testifying, stated that he believed it to be of 22 caliber. Although the doctor may not have been as well qualified as a

ballistics expert to give an opinion as to the caliber of the bullet, it was for the jury to determine the weight to be given his testimony and it was not prejudicial error under the circumstances to permit him to give his opinion. (See *People* v. *Johnson*, 203 Cal. 153, 163 [263 P. 524].)

The district attorney, in arguing to the jury that a death sentence should be imposed on defendant, said in substance that a sentence to life imprisonment did not necessarily mean that defendant would remain in the penitentiary all his life, that, if so sentenced, he would probably be paroled in ten or twelve years, that the penal institutions were very crowded and that the authorities "have got to make some sort of disposition . . . so they do the best they can to make room for some more, and out they go. And that is what happens in these life sentences." In response to an objection that these statements constituted prejudicial misconduct the court gave an instruction prepared by defendant's attorney admonishing the jury to "disregard any remarks made by the district attorney in his closing argument about parole." It is contended that notwithstanding this instruction the jury may have been improperly influenced by the argument of the district attorney against making a recommendation for a sentence of life imprisonment.

The matter of punishment for first degree murder is entrusted to the discretion of the jury, but this does not mean that there may not be legitimate argument concerning matters which the jury is entitled to consider in determining the punishment to be imposed. A person sentenced to life imprisonment may be granted a parole after he has served at least seven calendar years (Pen. Code, §§3040, 3046). In the case of *People* v. *La Verne*, 212 Cal. 29 [297 P. 561], the district attorney, in the course of his argument, stated in substance that it was a matter of common knowledge that a person under life sentence in the penitentiary could "be out on the streets again." The trial court refused to admonish the jury to disregard the statement and it was held on appeal that the remarks did not constitute reversible error "for it is a matter of common knowledge that a parole may be granted to a defendant serving life imprisonment." The statement of the district attorney in the present case could be construed to mean that because the penitentiaries are overcrowded, paroles are granted without regard to merit in order to pro-

vide space for incoming prisoners. This was not proper argument but we cannot say, in view of the court's instruction, that the remarks constituted reversible error.

■ With respect to the sanity issue three experts appointed by the court, all of whom were superintendents of state hospitals, testified that defendant was sane. Defendant, testifying in his own behalf on the trial of the sanity issue, said that he had received only a third grade education and had worked as a farmhand since he was fifteen. At the time of the trial he was 34. He testified that when his wife left him the second time she took everything but his clothes and that when, on the occasion of the last separation, she withdrew the savings account and demanded all of the community property, he felt that he was being unjustly treated and he worried about it. He said he could not sleep at night and that a voice kept saying to him "get it over with, do it, get it over with." He admitted that he knew it was wrong to shoot his wife but said "there was something just pushing my mind to it." A number of witnesses, some of whom had known defendant rather intimately for many years, testified that he was normally very cheerful and friendly but that for several weeks before the shooting he appeared to be worried, preoccupied and depressed. Other witnesses testified that they observed no change in his manner and that he appeared to be normal. The evidence is clearly sufficient to support the finding of the jury that defendant was sane at the time the crime was committed.

The judgment and order denying a new trial are affirmed.

Shenk, J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.