[Crim. No. 5021.   In Bank.   Feb. 21, 1950.]

THE PEOPLE, Respondent, v. LLOYD EDISON
SAMPSELL, Appellant.

Lloyd Edison Sampsell in pro. per., and J. Oscar Goldstein, under appointment by the Supreme Court on appeal, for Appellant.

Fred N. Howser, Attorney General, and Walter L. Bowers, Assistant Attorney General, for Respondent.

CARTER, J.—The defendant, Lloyd Edison Sampsell (also known as Lloyd Edison Sampsel) was tried by jury and found guilty of (1) the murder of Arthur W. Smith; (2) assault with a deadly weapon with intent to murder one Harley Cook; and (3) robbery in the first degree. To the first two counts of the indictment (murder and assault with a deadly weapon with intent to commit murder) the defendant pleaded not guilty; as to the third count (robbery) he stood mute and the court entered the plea of not guilty for him. During the course of the trial, however, the defendant took the stand in his own behalf and admitted that he had planned to, and did in fact, rob the Seaboard Finance Company, a corporation, located in San Diego.

On the morning of March 27, 1948, the defendant and a companion (Clarence [Ben] Richardson) went to the offices of the Seaboard Finance Company at Second and B Streets in San Diego for the admitted purpose of robbery. The defendant was armed with a gun which he exhibited to the employees

forcing them to turn over the contents of the cash drawers to him. He then demanded that the manager open the safe and when the manager protested that he could not do so, one of the young women employees volunteered to do so. The defendant admitted that she had every reason to fear violence from him. After the defendant had taken the money from the safe and was on his way out of the office, Mr. Smith, a customer, came out of one of the loan booths and started for the door which defendant had reached first. Smith tried to pass the defendant who refused to let him go. Cook, an employee, seeing the situation, grabbed Sampsell's hands at the wrists and tried to push him past Smith. Smith then got a hold on Sampsell's neck and head. It was at this point that the shooting occurred. Sampsell fired three shots, one of which killed Smith, and another wounding Cook. Sampsell got out of the building and ran part way up the block with two of the employees, the manager and assistant manager, in pursuit. Sampsell, after turning to fire at his pursuers, then jumped on the running board of a car driven by a Mr. Bootman and shot his gun directly into the car thereby causing a collision with another car. Sampsell then commandeered another car, and at the point of his gun, ordered the driver to proceed in the same direction. He jumped off the running board at First and Broadway and ran into a bus depot and was lost in the crowd. He was apprehended almost a year later in Phoenix, Arizona.

Defendant testified voluntarily and freely in his own behalf, telling of the robbery in narrative form, and insisted on relating his entire criminal record although he was informed that it was not necessary for him to do so. He makes no contention that the evidence does not support the verdict, with the exception of the count as to assault with intent to commit murder. His theory is that because of certain errors in the giving of certain instructions and the failure to give others, and because of misconduct on the part of the district attorney, he has been deprived of due process of law and the equal protection of the law. It appears that the deprivation complained of is the possibility that, except for the errors, the jury might have recommended life imprisonment rather than returning a verdict finding him guilty of murder in the first degree without recommendation.

It is contended that the trial court erred, in that the jury was not plainly instructed that its verdict must be unanimous, not only as to guilt and degree, but as to the penalty

to be imposed, and that the failure to so instruct deprived him of his right to trial by jury as guaranteed by the Constitution of the United States and article I, section 7, of the Constitution of the State of California.

The applicable instruction, as given, is as follows:

"Murder is classified into two degrees, and if you should find the defendant guilty of murder, it will be your duty to determine the degree of the offense, that is, whether first or second degree.

"Before you may return a verdict in this case, you must agree unanimously not only as to the innocence or guilt of the defendant, but also, if you should find him guilty, as to the degree of his offense.

"Although there are two degrees of murder, the evidence in this case is such that either the defendant is innocent of the charge of murder or he is guilty of murder in the first degree, for murder which is committed in perpetration of a robbery is murder of the first degree, whether the killing was intentional, unintentional or accidental.

"The law of this state provides that every person guilty of murder in the first degree shall suffer death or confinement in the state prison for life, at the discretion of the jury that finds him guilty. If you should find the defendant guilty of murder in the first degree, it shall be your duty to determine which of the two penalties shall be inflicted, the death penalty or confinement in the state prison for life. If you should fix the penalty as confinement in the state prison for life, you will so indicate in your verdict, using the form that will be handed to you when you retire to deliberate, but if you should fix the penalty as death, you will not specify the death penalty in the verdict. In determining which punishment shall be inflicted, you are entirely free to act according to your own judgment.

"*If any individual juror, or the jury as a whole, entertains a reasonable doubt as to which one of two or more punishments should be imposed, it is your duty to impose the lesser of the two.*" (Emphasis added.)

In this connection, the defendant contends that he has been prejudiced because the jury did not expressly state the penalty to be imposed. (See instruction set forth above.) He states that section 190 of the Penal Code provides that "Every person guilty of murder in the first degree shall suffer death, or confinement in the state prison for life, at the discretion of the jury trying the same; . . ." and that it is unconstitutional,

as construed by this court, in that persons in the same class may be sentenced to death either expressly by the jury, or by implication from the silence of the jury as to penalty. He also contends that where the jury has been instructed to remain silent as to the penalty to be imposed there can be no certainty as to its unanimity in that respect. The following portion of the instruction is said to be a usurpation of the discretion of the jury: "If you should fix the penalty as death you will not specify the death penalty in the verdict."

The *same* instruction, with one immaterial exception, as that given by the trial court as to the form of verdict, was requested by the attorney for the defendant and "refused as covered." After the sentence reading ". . . but if you should fix the penalty as death, you will not specify the death penalty in the verdict," defendant's request contained the following sentence *"and you will say nothing about punishment in the verdict."* (Emphasis added.) There was no request by the defendant for an instruction that the verdict as to penalty (or as to guilt or degree) must express the unanimous decision of the jury, although such an instruction was given by the court. There was a request that the jury be polled as to its verdict on the murder count, and on the count of assault with intent to commit murder. As to both counts, the poll showed a unanimous jury. Polling was waived by the prosecution and the defense as to the robbery count.

It would seem that in the present case, even under the view taken by a minority of this court (see dissenting opinions, *People* v. *Williams,* 32 Cal.2d 78 [195 P.2d 393]) the penalty was left entirely to the discretion of the jury as provided in Penal Code, section 190. The trial court instructed the jury that it was its duty to impose the lesser of the two penalties if *any individual juror entertained a reasonable doubt concerning the penalty to be imposed. Andres* v. *United States,* 333 U.S. 740 [68 S.Ct. 880, 92 L.Ed. 1055] relied upon by defendant, presents a different state of facts. The jury, in that case, was told: "And, finally, you will recall I said that you are instructed that before you may return a qualified verdict of murder in the first degree without capital punishment, that *your decision to do so must, like your regular verdict, be unanimous."* (Emphasis added.)

By the defendant's own admissions, he was engaged in an armed robbery. There is no question but that Arthur W. Smith met his death at the hands of the defendant during the course

of that robbery. Section 189 of the Penal Code provides that "All murder which is perpetrated by means of poison, or lying in wait, torture, or by any other kind of willful, deliberate, and premeditated killing, *or which is committed in the perpetration or attempt to perpetrate . . . robbery . . . is murder of the first degree. . . .*" (Emphasis added.) (*People* v. *Hill,* 22 Cal.2d 863 [141 P.2d 418] ; *People* v. *Bautista,* 22 Cal.2d 867 [141 P.2d 417] ; *People* v. *Vaiz,* 55 Cal.App.2d 714 [131 P.2d 407].)

Defendant argues that the (chief deputy district attorney) district attorney was guilty of prejudicial misconduct in two instances, both of which occurred during his closing argument to the jury.

■ The first instance is as follows: "Now, it is interesting to note that in going over these steps (the procedure after the death penalty has been imposed by the jury) that Counsel omitted one very, very important step. He said the responsibility (for the imposition of the death penalty) was entirely yours. There was nothing the Court could do. Nothing we could do. It was entirely your responsibility. Nothing they could do in San Quentin, or wherever it happens to be. Well, it so happens, Ladies, that the State of California has what is known as an automatic appeal in a death case, and *it is not entirely your responsibility. Your verdict must be approved in a death case by the Supreme Court of the State of California before all the steps that he mentioned are taken,* to be sure that the Supreme Court is in agreement with your verdict. *So it is not all your responsibility.* It is part of the Supreme Court of the State of California's responsibility. That step was omitted by Counsel in his attempt to appeal to your sympathy. So that you are not assuming the entire responsibility at all. But if you are convinced, that I am sure you will be and are, that he is guilty of first degree murder in this case, and there should be no recommendation, in such event the Supreme Court will pass upon that. Then it will be their responsibility, after you have passed on the facts and the evidence in this case. (The second assignment of misconduct is the statement following.) And in this argument against the extreme penalty, the inference is that the other alternative should be used. Now, a lot of people are under the mistaken notion that life imprisonment means the rest of their natural life, in California. That is not true. The *average life sentence in the State of California is a little under seven years.* That is what it means. That is the punishment he is asking, for the life of

Mr. Smith and others. Less than seven years. Not for natural life at all. . . .'' (There was no objection.)

It appears necessary to quote the following excerpts from the defense attorney's argument to the jury: ''Ladies, you have been asked and you have assumed one of the most difficult responsibilities that any human being can be asked to assume. In the hands of each one of you rests the life of Lloyd Sampsell. A verdict of first degree death penalty can be returned only by unanimous consent. Any one of you jurors can stop that verdict. So each one of you will be individually responsible if that verdict be returned. . . . Now, as I say each of you ladies will be individually responsible for the death of Lloyd Sampsell, if you should return such a verdict. You can't share that responsibility with your other fellow jurors because you, any one of you, could have stopped it and you failed to stop it. So you, the individual who failed to stop it, have complete responsibility. (At this point, the attorney gave a complete and graphic description of the procedure up to and including the scene in the death chamber). . . . In some states it has been the custom, when the judge imposes sentence, the extreme penalty, the death penalty, on a defendant, to add to that, 'And may God have mercy upon your soul.' Wouldn't it have been much better if we could breathe that breath for the juror who returned that verdict—'May God have mercy on your soul?' '' (An objection to this line of argument was overruled.)

The defendant maintains that the conduct of the district attorney might have been cured by a specific instruction to that effect by the court, but that no such instruction was given. (No such instruction was requested.) He contends that the statement made by the district attorney as to the effect of the automatic appeal to this court misled the jury to his prejudice and may have been responsible for the imposition by it of the death penalty. He cites cases to the effect that this court has no right to review the exercise of the jury's reasonable discretion in capital cases. (To that effect, when there is evidence to sustain the jury's finding, see: *People* v. *Adams,* 199 Cal. 361 [249 P. 186] ; *People* v. *Hill,* 22 Cal.2d 863 [141 P.2d 418] ; *People* v. *Bautista,* 22 Cal.2d 867 [141 P.2d 417] ; *People* v. *Berryman,* 6 Cal.2d 331 [57 P.2d 136] ; *People* v. *French,* 12 Cal.2d 720 [87 P.2d 1014].) The defendant, however, made no attempt to object to these remarks during the course of the trial, nor was the court requested to admonish the jury con-

cerning them. It would appear that such an objection and request should have been made (*People* v. *Codina*, 30 Cal.2d 356, 362 [181 P.2d 881]; *People* v. *Chilcott*, 18 Cal.App.2d 583 [64 P.2d 450]), since it does not appear that the case falls within one exception to the general rule as set forth in *People* v. *Podwys*, 6 Cal.App.2d 71, 76 [44 P.2d 377]. That exception is this: Where an examination of the entire record fairly shows that the acts complained of are of such a character as to have produced an effect which, as a reasonable probability, could not have been obviated by any instructions to the jury, then the absence of such assignment and request will not preclude the defendant from raising the point. (See, also, *People* v. *Stafford*, 108 Cal.App. 26 [290 P. 920]; *People* v. *Simon*, 80 Cal.App. 675 [252 P. 758].) Nor does the case fall within another exception as stated in *People* v. *Berryman*, 6 Cal.2d 331, 337 [57 P.2d 136]: ". . . where the case is closely balanced and there is grave doubt of defendant's guilt, and the acts of misconduct are such as to contribute materially to the verdict, a miscarriage of justice results requiring a reversal. (*People* v. *Fleming*, 166 Cal. 357 [136 P. 291, Ann.Cas. 1915B 881].)"

It is also contended that the statement that a life term in California is "less than seven years" is a misstatement of fact and of law, and "vital error" curable only by a specific instruction which was not given. (No such instruction was requested.) Section 3046 of the Penal Code provides that "No prisoner imprisoned under a life sentence may be paroled until he has served at least seven calendar years." The district attorney's remark would seem to be a misstatement of the law since a "life-termer" is not entitled to credits for good behaviour. Whether error of this character is so prejudicial as to constitute reversible error (Const., art. VI, § 4½) must, in the last analysis, depend upon the particular facts of the individual case. (*People* v. *Weatherford*, 27 Cal.2d 401, 418 [164 P.2d 753]; *People* v. *Podwys*, 6 Cal.App.2d 71, 74 [44 P.2d 377].) Such a remark was held not to constitute reversible error in *People* v. *LaVerne*, 212 Cal. 29 [297 P. 561], even though the trial court refused to admonish the jury to disregard the remarks. In *People* v. *Caetano*, 29 Cal.2d 616, 619 [177 P.2d 1], the judge had admonished the jury to disregard any remarks made by the prosecuting attorney about parole, and this court said that the argument was not proper, but that it did not constitute reversible error. In the instant case, when the argument made by defense counsel is taken into

consideration, it would appear that the prosecution did not commit such prejudicial error as to warrant a reversal. The court admonished the jury generally during the defense attorney's argument that they were to disregard any statements of counsel other than "what you have heard from the witness stand."

The district attorney's remarks concerning the function of this court where an automatic appeal is taken and his remarks concerning the probability of parole constitute reprehensible conduct which is not to be condoned. It is *only* because the evidence in this case so clearly establishes the defendant's guilt that we do not consider that reversible error was committed. We are not unmindful of the fact that the remarks made by the district attorney may have been in response to those made by counsel for the defendant, but we can see no justification for such an argument in the light of the settled rule respecting the function of this court and the provisions of section 3046 of the Penal Code.

[4] With respect to the instructions, defendant contends that he has been prejudiced because of the instructions as a whole. He insists that the court instructed the jury as to the specific intent necessary for each of the three crimes with which he was charged, and then instructed that when a murder was committed in the course of a robbery, it was murder in the first degree despite the fact that the killing might have been accidental or unintentional and that from this, and the fact that he had admitted his intent to rob the Seaboard Finance Company, the jury could conclude that the intent necessary for Count Two (assault with intent to commit murder) was proved so as to influence its verdict as to penalty. It is in this connection that defendant contends that the evidence does not support the verdict finding him guilty of assault with intent to murder Harley Cook in that the necessary element of intent was not proved beyond a reasonable doubt.

The record shows that the evidence was more than ample to support the findings of the jury that defendant was guilty of murder in the first degree and of robbery in the first degree. A reading of the instructions as a whole, in conjunction with the testimony adduced upon the trial of the case, compels the belief that the defendant was accorded a fair and impartial trial. In view of the evidence it would appear unnecessary to discuss defendant's contentions with regard to Count Two

(assault with intent to commit murder. A review of the entire record convinces us that the judgment should be affirmed, and it is so ordered.

Gibson, C. J., Shenk, J., Edmonds, J., Traynor, J., Schauer, J., and Peek, J. pro tem., concurred.

Appellant's petition for a rehearing was denied March 20, 1950. Spence, J., did not participate.