**SAMPSELL v. PEOPLE OF STATE OF CALIFORNIA et al.**

No. 12704.

United States Court of Appeals Ninth Circuit.

Sept. 18, 1951.

Rehearing Denied Oct. 29, 1951.

J. Oscar Goldstein, San Francisco, Cal., for appellant.

Edmund G. Brown, Atty. Gen., State of Cal., Clarence A. Linn, Deputy Atty. Gen., for appellee.

Before MATHEWS, STEPHENS and HEALY, Circuit Judges.

STEPHENS, Circuit Judge.

Sampsell was convicted in a California Superior Court of murder in the first degree, assault with a deadly weapon with intent to murder, and robbery in the first degree, and sentenced to death. The California Supreme Court affirmed the judgment, People v. Sampsell, 1950, 34 Cal.2d 757, 214 P.2d 813, and the United States Supreme Court denied certiorari, Sampsell v. California, 1950, 339 U.S. 990, 70 S.Ct. 1016, 94 L.Ed. 1391. He is here appealing from a judgment of the United States District Court dismissing his petition for the issuance of the writ of habeas corpus. The judgment followed the issuance of an order to show cause upon which issues were drawn in accordance with the usual practice.

■ Where a petitioner has exhausted his state remedies and his petition for certiorari in the United States Supreme Court has been denied, a federal district court has jurisdiction to entertain an application for federal habeas corpus. Darr v. Burford, 1950, 339 U.S. 200, 70 S.Ct. 587, 94 L.Ed. 761; Title 28 U.S.C.A. § 2254. In such a case, appellate jurisdiction is conferred upon this court by Title 28 U.S.C.A. § 2253. The denial of certiorari by the United States Supreme Court carries no weight in the subsequent federal habeas corpus proceeding. Darr v. Burford, supra, 339 U.S. at page 216, 70 S.Ct. at page 596.

■ Sampsell claims and has the burden of showing that the state so departed from constitutional requirements as to justify a federal court's intervention. Darr v. Burford, supra, 339 U.S. at page 218, 70 S.Ct. at page 597. The Great Writ does not extend to the prisoner in this type of proceeding unless he is in custody in violation of the constitution or laws or treaties of the United States. Title 28 U.S.C.A. § 2241(c)(3).

■ The intervention of the United States District Court is justified by petitioner because, as he claims, the jury was not instructed to the effect that unanimous agreement of the jury members upon the penalty was necessary, should a verdict of guilty be returned. He relies upon Andres v. United States, 1948, 333 U.S. 740, 68 S.Ct. 880, 92 L.Ed. 1055, where a conviction in a *federal* district court was reversed for misdirection of the jury as to the unanimity required on the penalty issue. In the Andres case the Supreme Court was exercising its function of reviewing *federal* criminal proceedings, and was not dealing with the question of the deprivation of constitutional rights. Whether cognizance of this point by the district court was proper in this proceeding we do not stop to consider since the contention is without support factually. The instructions clearly covered the point. The jury were told that if a verdict of guilty of murder is found by the unanimous vote of the jurors the penalty of death or imprisonment for life was a matter of discretion for the jury. They were told that such discretion should be exercised in the following manner: If the jury should find that the punishment is to be life imprisonment, notation to that effect is to be added to the verdict of guilty, but that if the punishment should be death, nothing should be added to the verdict of guilty. The jury were also told that "If any individual juror, or the jury as a whole, entertains a reasonable doubt as to which one of two or more punishments should be imposed, it is your duty to impose the lesser of the two." It is not and could not well be contended that life imprisonment is not the lesser of the two. Jurors cannot be assumed to be below the level of common understanding. And it can hardly be argued that the common and plain meaning of these instructions is that the verdict of "guilty" without more meant and was under the California statute a verdict unanimously agreed to that the punishment should be that of death. Such was the decision of the Supreme Court of California. We hold that it was not error for the district court to dismiss the petition as to this point.

Petitioner also contends that alleged misconduct of the district attorney in his closing remarks to the jury deprived him of a fair trial, in violation of the Fourteenth Amendment. These remarks followed the defense attorney's argument to the jury in which he laid particular emphasis upon the complete responsibility of each individual juror for determining whether the death penalty should be inflicted.

During the course of the trial the petitioner voluntarily took the stand and admitted the robbery and the killing, and also related much as to his criminal record. Under state law, California Penal Code 1949, Section 189, any murder committed in the perpetration of robbery is murder in the first degree irrespective of intention. People v. King, 1939, 13 Cal.2d 521, 90 P.2d 291. California law further provides that every person guilty of murder in the first degree shall suffer death, or confinement in the state prison for life, at the discretion of the jury trying the same. California Penal Code 1949, Section 190.

Therefore, petitioner's own testimony subjected him to conviction of murder in the first degree. The only really contested issue before the jury was as to the penalty to be imposed. The district attorney addressed the jury on this issue as follows:

"Now it is interesting to note that in going over these steps [the procedure after death penalty is pronounced] that Counsel [in his argument to the jury] omitted one very, very important step. He said the responsibility [for imposition of the death penalty] was entirely yours. There was nothing the Court could do. Nothing we could do. It was entirely your responsibility. Nothing they could do in San Quentin, or wherever it happens to be. Well, it so happens, Ladies, that the State of California has what is known as an automatic appeal in a death case, and it is not entirely your responsibility.

"Your verdict first must be approved in a death case by the Supreme Court of the State of California before all of the steps that he mentions are taken, to be sure that the Supreme Court is in agreement with your verdict.

"So it is not all your responsibility. It is part of the Supreme Court of the State of California's responsibility. That step was omitted by counsel in his attempt to appeal to your sympathy. So that you are not assuming the entire responsibility at all.

"But if you are convinced, that [sic] I am sure you will be and are, that he is guilty of first degree murder in this case, and there should be no recommendation [that is, provision for life imprisonment in the written verdict], in such event the Supreme Court will pass upon that. Then it will be their responsibility, after you have passed on the facts and the evidence in this case. And in this argument against the extreme penalty, the inference is that the other alternative should be used.

"Now a lot of people are under the mistaken notion that life imprisonment means the rest of their natural life, in California. That is not true. The average life sentence in the State of California is a little under seven years. That is what that means. That is the punishment he is asking, for the life of Mr. Smith and others. Less than seven years. Not for natural life at all * * *."

The California Supreme Court considered the remarks of the district attorney and dealt with them in its unanimous opinion. With reference to the statement of the district attorney that a life term in California is "less than seven years", that court said, People v. Sampsell, 1950, 34 Cal.2d 757, 764, 214 P.2d 813, 818: "Section 3046 of the Penal Code provides that 'No prisoner imprisoned under a life sentence may be paroled until he has served at least seven calendar years.' The district attorney's remark would seem to be a misstatement of the law since a 'life-termer' is not entitled to credits for good behaviour * * *." The court goes on to hold that this error was not prejudicial since the trial court admonished the jury generally during the defense attorney's argument that they were to disregard any statements of counsel other than "what you have heard from the witness stand". It could well have said also that the jury was instructed to take the law solely from

the court and that the instruction of the court plainly stated the law as we have stated it under the first point herein treated.

The California Supreme Court then states 34 Cal.2d at page 765, 214 P.2d at page 818, of the cited opinion: "The district attorney's remarks concerning the function of this Court where an automatic appeal is taken and his remarks concerning the probability of parole constitute reprehensible conduct which is not to be condoned.[1] It is *only* because the evidence in this case so clearly establishes the defendant's guilt that we do not consider that reversible error was committed." [Italics from original opinion.] It also stated that no objection to the remarks was made before the verdict was returned. It would appear that defense counsel, at no time, was under the apprehension that the district attorney's random remarks would or did mislead the jury.

■ Our function in this type of proceeding is not to correct errors committed in a state trial court. Frank v. Mangum, 1915, 237 U.S. 309, 35 S.Ct. 582, 59 L.Ed. 969. " '[T]he state has full control over the procedure in its courts, both in civil and criminal cases; subject only to the qualifications that such procedure must not work a denial of fundamental rights, or conflict with specific and applicable provisions of the Federal Constitution.' " Murphy v. Massachusetts, 1900, 177 U.S. 155, 163, 20 S.Ct. 639, 642, 44 L.Ed. 711. We must here determine whether the writ of habeas corpus should have issued upon the ground that petitioner is in custody in violation of the constitution or laws or treaties of the United States. Title 28 U.S.C.A. § 2241(c)(3).

■ Federal courts must withhold interference with the administration of state criminal justice unless a federal right has been violated. See cases reviewed in Hawk v. Olson, 1945, 326 U.S. 271, 66 S.Ct. 116, 90 L.Ed. 61. When collaterally attacked a judgment of a court carries with

it the presumption of regularity and may not lightly be set aside, even on habeas corpus. Johnson v. Zerbst, 1938, 304 U.S. 458, 58 S.Ct. 1019, 82 L.Ed. 1461. The control by this court over criminal trials in state courts is more limited than our review of a criminal proceeding in the federal district courts. Malinski v. New York, 1945, 324 U.S. 401, 411, 65 S.Ct. 781, 89 L.Ed. 1029.

The issue in this type of proceeding is not whether the statements of the district attorney deprived petitioner of trial by jury, see Palko v. Connecticut, 1937, 302 U.S. 319, 325, 58 S.Ct. 149, 82 L.Ed. 288, but whether his conviction was the result of an unfair trial, Adamson v. California, 1947, 332 U.S. 46, 67 S.Ct. 1672, 91 L.Ed. 1903, and therefore deprived him of life, liberty, or property without due process of law. United States Constitution, Amendment XIV, Section 1.

■ Petitioner was given a jury trial and we can see nothing in the ill considered remarks of the district attorney that could move a federal court to hold, over the judgment of the state Supreme Court, that the trial was unfair to the point of violating the Fourteenth Amendment to the Constitution of the United States or in violation of any other section of that charter. In Buchalter v. New York, 1943, 319 U.S. 427, 431, 63 S.Ct. 1129, 1132, 87 L.Ed. 1492, the court stated: "The speeches of counsel for defendants apparently provoked statements by the District Attorney of which petitioners now complain. This does not raise a due process question." See Adamson v. California, supra; Crumpton v. United States, 1891, 138 U.S. 361, 364, 11 S.Ct. 355, 34 L.Ed. 958; Berger v. United States, 1935, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314, to the effect of a strong case as to guilt.

■ The contention that the variation of treatment given to accused persons in applying California Penal Code Section 190,[2] due to conflicting decisions of the

---

1. California Penal Code 1949, "§ 1239. * * * (b) When upon any plea a judgment of death is rendered, an appeal is automatically taken by the defendant without any action by him or his counsel."

2. California Penal Code 1949, "§ 190. Every person guilty of murder in the first

state Supreme Court, deprives petitioner of equal protection of the laws, is without merit. That provision does not assure a defendant that juries in state murder trials shall all be given exactly the same instructions or that state decisions shall be uniform on varying fact situations. It is normally the function of a state's highest tribunal to assure its constituents reasonable uniformity of practice in lower state courts. Failure to do so however does not deprive litigants of the equal protection of the laws. Liser.ba v. California, 1941, 314 U.S. 219, 226, 62 S.Ct. 280, 86 L.Ed. 166. Uniformity of judicial decisions is not assured by the equal protection guaranty. Milwaukee Elec. Ry. Co. v. Milwaukee, 1920, 252 U.S. 100, 106, 40 S.Ct. 306, 64 L.Ed. 476. We have already said that the jury in the instant case was properly and plainly instructed as to the applicable law.

Petitioner claims that consideration of Article VI, Section 4½ of the California Constitution by the California Supreme Court is violative of the United States Constitution. The provision is as follows: "Sec. 4½. [Harmless Errors to be Disregarded.] No judgment shall be set aside, or new trial granted, in any case, on the ground of misdirection of the jury, or of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."

The principles set forth in Murphy v. Massachusetts, 1900, 177 U.S. 155, 158, 20 S.Ct. 639, 44 L.Ed. 711, dispose of this point.

The judgment of the district court is

Affirmed.

degree shall suffer death, or confinement in the state prison for life, at the discretion of the jury trying the same; or, upon the plea of guilty, the court shall determine the same; and every person guilty of murder in the second degree is punishable by imprisonment in the state prison from five years to life; provided, however, this section is to apply to all persons now serving sentence in a state prison for murder of the second degree

and the sentence of such persons may be modified or reduced to conform to this section; provided, however, that the death penalty shall not be imposed or inflicted upon any person for murder committed before such person shall have reached the age of eighteen years; provided, further, that the burden of proof as to the age of said person shall be upon the defendant."