**Anthel LaVan BROWN, a/k/a Robert Michael Wilcox, a/k/a Bo-Bo Brown, Petitioner,**

v.

**Roger CRIST, Warden, Montana State Prison, Respondent,**

and

**The Attorney General of the State of Montana, Additional Respondent.**

**No. CV 80-31-BU.**

United States District Court, D. Montana, Butte Division.

July 7, 1980.

James P. Taylor, Legal Intern, and John W. McDonald, Jr., Supervising Atty., Montana Defender Project, U. of M. School of Law, Missoula, Mont., for petitioner.

Mary B. Troland, Asst. Atty. Gen., Helena, Mont., for respondents.

## OPINION AND ORDER

RUSSELL E. SMITH, District Judge.

Brown was charged and sentenced in the state district court as follows:

| Charge | Sentence |
|---|---|
| Felony theft | 10 years |
| Deliberate homicide | 100 years |
| Sexual intercourse without consent | 20 years |
| Robbery | 40 years |
| Aggravated assault | 20 years |
| Consecutive sentences | 190 years |

In the state courts Brown was represented by appointed counsel who advised him not to plead guilty. He was advised of his right not to incriminate himself, of his right to a jury trial, and of his right to confront his accusers. The district judge told him of the maximum penalties involved and rather

bluntly said that if he maintained his guilty pleas he would at best spend the rest of his life in prison. He was examined by a psychiatrist and found to be sane.

Brown entered a plea of guilty to the crime of deliberate homicide and stated in connection with the plea that he recalled entering deceased's premises with a gun and that deceased was dead when he left but that he did not recall shooting him. He was charged with the theft of a hand gun, some shells, and a suitcase. He pled guilty to the charge of felony theft but claimed ownership of the suitcase. He pled guilty to the crime of rape, aggravated assault, and robbery, all alleged to have been committed as to one woman, but, when asked what he did, he said he didn't do anything and had never seen the woman. When asked by the court why he pled guilty, petitioner said, "I want out of this jail and out of this county."

Shortly after the conviction, Brown filed in the Supreme Court of Montana a petition for post-conviction relief in which he asked that the sentence be revoked and that he be permitted to withdraw his pleas of guilty. The supreme court ordered that the case be remanded to the district court for hearing. The district court conducted an evidentiary hearing at which Brown contended that his pleas were not voluntary for reasons which may be summarized as follows:

1. The record made at the time of the sentencing does not disclose a factual basis for the plea.

2. Neither the record made at the time of the sentencing nor that in the post-conviction hearing shows that the value of the property admittedly stolen, i. e., the gun and shells, was $150.00, an amount sufficient to sustain a conviction for a felony theft.

3. The court did not explain the difference between deliberate homicide and mitigated deliberate homicide.

4. Brown's statement that he wanted out of "this jail and out of this county" placed a constitutional duty on the court to inquire into the conditions in the county jail before sentencing.

5. He did not understand the charges against him.

At the post-conviction hearing, Brown took the position that the record made prior to the time of sentencing was conclusive and that his petitions should be granted solely on the basis of that record. Over Brown's objection, the court admitted evidence bearing on the factual basis for the various claims that the plea was not voluntary. Brown produced no evidence on his own behalf and did not cross-examine the witnesses for the state. The district court made findings, and on the basis of them denied the motion to withdraw Brown's plea. The supreme court (*In re Brown*, Mont., 605 P.2d 185, 37 St.Rptr. 65 (1980)) considered the arguments made, and affirmed.

Some important problems in state-federal relations are involved:

■ *First:* Rule 11 of the Federal Rules of Criminal Procedure is not binding on state courts, and a federal court, in deciding whether there have been violations of federal constitutional rights, may look at the whole record, up to the time of federal review.

It is now settled that Fed.R.Crim.P. 11 is not a constitutional mandate to the state courts. In *Wilkins v. Erickson*, 505 F.2d 761 (9th Cir. 1974), the court sustained a conviction, relying upon a record made in an evidentiary hearing in the federal district court. In that case, the court cited with approval *McChesney v. Henderson*, 482 F.2d 1101 (5th Cir. 1973), a case in which a conviction was upheld on the basis of the record made in a state habeas corpus proceeding. Consequently this case is determined on the basis of the whole record.[1]

■ *Second:* Where the state has conducted a post-conviction hearing in which the petitioner has had an opportunity to explore fully, in law or in fact, any constitutional violations, the federal court will, with the exceptions specifically noted in *Boykin*

1. *See also United States v. Pricepaul*, 540 F.2d 417 (9th Cir. 1976).

*v. Alabama*, 395 U.S. 238, 243, 89 S.Ct. 1709, 1712, 23 L.Ed.2d 274 (1969), presume that the conviction is free of constitutional violation if the petitioner does not go forward with evidence to the contrary.

█ It is axiomatic that a guilty plea must be voluntary. A voluntary plea is one which is, first, the product of an informed consent, i. e., a plea made with knowledge of fundamental constitutional rights, and an understanding of the nature of the crimes charged;[2] and, second, it must not be the product of coercion of any kind.[3]

As to the claim that the pleas were not informed, it is noted that the court expressly advised Brown of his privilege against self-incrimination, his right to a jury trial, and his right to confront his accusers. The court advised Brown of the maximum penalties and told him in advance of sentence that he would spend the rest of his life in confinement. These are the kind of rights as to which the Court in *Boykin* said, "We cannot presume a waiver of these three important federal rights from a silent record." 395 U.S. at 243, 89 S.Ct. at 1712.

█ Where, however, we deal, not with a knowledge of rights, as in *Boykin*, but with the effect of what was said and done in a given case upon the mind of a specific defendant, we confront a different problem. Lay people cannot be presumed to know their constitutional rights and cannot be expected to know the maximum penalties for crimes charged, but they do know what goes on in their own minds. Where, as here, a defendant may, under a post-conviction relief statute, prove the exact effect that the words used and the events that occurred had upon him, it is my opinion that the presumption normally applicable to judgments of conviction should be applied.

The Court of Appeals for the Ninth Circuit has said:

> We do not presume that the state courts commit errors, much less that they have deprived defendants appearing before them of their constitutional rights. The presumptions are the other way. *Sampsell v. People of State of California*, 9 Cir., 1951, 191 F.2d 721, 725; *Schlette v. People of State of California*, 9 Cir., 1960, 284 F.2d 827, 833–834.

*Herrera v. Wilson*, 364 F.2d 798, 800 n. 3 (1966).[4] The burden should be on the defendant to go forward with the evidence, at least far enough to disclose that he was not informed of some element of the crime which had some relevant relationship to his plea or was subjected to some external coercion.

In this case, for example:

1. We are asked to set aside the guilty pleas because petitioner said that he pled guilty because, in his words, "I want out of this jail and out of this county." This claim is somewhat paradoxical. If petitioner pled not guilty, he would be in the county jail a longer period of time than if he pled guilty. In any event, if the conditions in the jail were intolerable, perhaps that could be said to be coercive. But nowhere is there a hint that the jail was other than a normal, well-run county jail.[5]

2. Petitioner now states that he was not advised that deliberate homicide might be mitigated and a lesser maximum sentence imposed by proof that an act was done under emotional stress.[6] But nowhere is there any indication that Brown suffered from any "emotional stress for which there is a reasonable explanation." Brown now urges the court to speculate that he was under the requisite mental stress and then,

2. *Boykin v. Alabama*, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

3. *North Carolina v. Alford*, 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970).

4. See *Darr v. Burford*, 339 U.S. 200, 70 S.Ct. 587, 94 L.Ed. 761 (1950); *United States v. Marron*, 564 F.2d 867 (9th Cir. 1977); *United States v. Lustig*, 555 F.2d 751 (9th Cir. 1977); *Whitehead v. United States*, 155 F.2d 460 (6th Cir. 1946).

5. *Kress v. United States*, 411 F.2d 16 (8th Cir. 1969); *Verdon v. United States*, 296 F.2d 549 (8th Cir. 1961).

6. MCA § 45–5–103 (1979). See *State v. Azure*, Mont., 573 P.2d 179 (1977).

on the basis of the fact established by speculation, infer that Brown's plea was not an informed plea.

3. Brown now claims that the record does not show that he understood the element of intent as it applied to the deliberate homicide charge. The Montana law defines deliberate homicide as a purposeful killing [7] or as a felony killing.[8] The penalties for deliberate homicide under either definition are identical. Brown was charged in Count II of the amended information as follows:

The crime of DELIBERATE HOMICIDE, A Felony, in violation of Section 94–5–102(1), R.C.M. 1947, committed in the County of Gallatin, State of Montana, as follows to-wit:

That . . . Anthel LaVan Brown . . . did, then and there wilfully, unlawfully, purposely or knowingly or while engaged in the commission of or attempt to commit the crime of robbery, a felony, cause the death of Glen Belnap.

. . .

Brown's alleged confusion arises out of the fact that he was not advised that a purposeful killing under MCA § 45–5–102(1)(a) requires an intent to kill. Brown admitted in his confession that he entered the gas station with an intent to rob and that he shot a man. Five bullets were found in the body. If Brown had been charged only with a purposeful killing, and if the record revealed nothing as to his intent, then the argument would have validity. But here there was a felony killing, and here there was an admitted intent to rob. In light of the record, any explanations about an intent which would have been necessary had there been no intent to rob would have been purely hypothetical. In any event, Brown has shown nothing to justify his claimed confusion or how it affected his pleas.

I think that the allocation of the burden of proof here is not contrary to any controlling cases. In *Henderson v. Morgan*, 426 U.S. 637, 96 S.Ct. 2253, 49 L.Ed.2d 108 (1976), defendant, indicted for first-degree murder, entered a plea of guilty to second-degree murder as a lesser included offense for which he had never been formally charged. After a post-conviction hearing, the federal district judge found from the proof offered that defendant had never been advised that second-degree murder involved the element of intent. From that fact certainly an inference of lack of understanding may follow. In *Jones v. Montana*, 235 F.Supp. 673 (D.Mont.1964), Jones was charged with and pled guilty to burglary in the first degree. He had not been told that burglary in the first degree was burglary committed after sundown and carried a higher penalty than burglary in the second degree. After conviction, when he found out about the difference between first- and second-degree burglary, he sought post-conviction relief and stated that he had in fact been guilty of a burglary committed before sundown. Thus it appeared that the defendant had not been informed of a relevant element of first-degree burglary.

*State v. Azure*, Mont., 573 P.2d 179 (1977), differs from this case, in that Azure's claim of mental stress after the plea of guilty but before sentencing made relevant the failure to advise that deliberate homicide could be mitigated.

█ *Third:* Where a plea is otherwise voluntary, the record need not disclose a factual basis for the plea, but the conviction may rest on the admission of guilt.

It is my opinion that the whole record in this case affirmatively discloses a factual basis for all of the crimes charged, with the possible exception of the theft charge. Although the judge did not advise Brown, the record does show that Brown was aware of the differences between grand and petty theft because his counsel discussed the matter in court in the presence of defendant. Further, it is not seriously urged here that petitioner was not aware of the differences. The record does not affirmatively show the value of the admittedly stolen items, i. e., the shells and the gun, and does not refute Brown's statement that he owned the suit-

---

7. MCA § 45–5–102(1)(a) (1979).

8. MCA § 45–5–102(1)(b) (1979).

case. Counsel for Brown expressed a belief that the value of the shells and gun would not exceed $150.00, the amount required to support the charge of felony theft.

 If there has been an understanding of the charges, there is no federal constitutional right to have the record in a state court affirmatively disclose a factual basis for a guilty plea. As has been said, that right in the federal court is a product of Fed.R.Crim.P. 11 and not a product of the United States Constitution. It is true that in cases where guilty pleas have been accepted over protestations of innocence the language of some opinions has indicated the importance of the factual basis. Such language, however, does not in my opinion, articulate a constitutional right, but rather bears upon the question of whether a plea was voluntary. Thus, in *North Carolina v. Alford*, 400 U.S. 25, 38, 91 S.Ct. 160, 168, 27 L.Ed.2d 162 (1970), the Court said: "In view of the strong factual basis for the plea demonstrated by the State and Alford's clearly expressed desire to enter it despite his professed belief in his innocence, we hold that the trial judge did not commit constitutional error in accepting it." (Footnote omitted.) In *Alford*, however, the defendant, who was charged with a crime to which a death penalty was attached (not so here), pled guilty to second-degree murder. He later claimed that the threat of the death penalty was so strong that his plea to the lesser crime was not voluntary. Where death is a threat, the protestations of innocence on an otherwise silent record might very well lead to an inference that a plea was not voluntary. Where, however, a strong factual basis for the guilty plea is shown, then it may be concluded that the plea was not involuntary but rather a choice between two evils. In other words, a factual basis, or the lack of one, may in some circumstances have an evidentiary value in determining whether a plea was voluntary, and in my opinion *Alford* expresses no more than that.

Proof, if there was such, that Brown did own the suitcase or that the value of the shells and gun was less than $150.00, would have borne upon the voluntariness of the plea of guilty to the felony theft charge. But if there was any such evidence, Brown chose not to introduce it, and if the admission by plea was voluntary, then that admission is sufficient proof of the value to sustain the judgment.

The petition for a writ of habeas corpus is denied.