[Crim. No. 4197.   In Bank.—March 24, 1939.]

THE PEOPLE, Respondent, v. WILLIAM G. SMITH, Appellant.

Albert L. Wagner and Kenneth G. McGilvray for Appellant.

U. S. Webb, Attorney-General, and J. Q. Brown, Deputy Attorney-General, for Respondent.

CURTIS, J.—The defendant was found guilty of murder in the first degree and sentenced to suffer the death penalty. From the judgment of conviction so rendered against him and from the order of court denying his motion for a new trial the defendant has appealed.

The evidence in the case is without conflict. On January 3, 1936, Mary Mendonca was residing with Mr. and Mrs. Frank Durkee in their home located in the city of Sacramento. On that evening Mr. and Mrs. Durkee left Mary Mendonca alone in their home, and between 6 and 7 o'clock on that evening Mary Mendonca heard a noise in one of the bedrooms which sounded as if a person was in said room. On hearing the noise she jumped up and ran next door to the home of Mr. and Mrs. Elmer Cox and told Mr. Cox that someone was prowling around the Durkee home. Mr. Cox got his pistol, and he and Mary Mendonca went back to the Durkee home. On entering the hall, Mary Mendonca switched on the electric light and saw the defendant standing in the doorway of one of the bedrooms. Mr. Cox told him to hold up his hands, and with that the defendant shot Mr. Cox and felled him to the floor. The defendant followed the first shot by three other shots, all of which took effect in Mr. Cox's body. Nothing was said by any of the three persons during the shooting except that Mr. Cox said to the defendant after the first shot not to shoot any more, but the defendant kept on shooting. As a result of these shots, Mr. Cox was taken to a hospital where he died four days later. The defendant escaped from the house through a window. He remained in Sacramento during that night, and the next morning read in the papers of the murder of Elmer Cox.

He eventually made his way to Auburn in this state and from there to other parts of this state. During the month of June, 1936, he was received as a prisoner in the state prison at San Quentin. While there he disclosed to a fellow prisoner named Rowell the fact that he was wanted in Sacramento for shooting "some fellow by the name of Cox". This information was communicated by Rowell to the prison authorities, who in turn informed the police department at Sacramento of defendant's presence in San Quentin and of this incriminating admission. W. A. Thomas, a member of the police force of Sacramento, went to San Quentin, where he met the defendant in the presence of the captain of the guards at San Quentin, Ralph H. New. After some preliminary conversation between Mr. Thomas and the defendant in which Mr. Thomas told the defendant of the object of his visit and that the authorities at Sacramento believed they had a good case against him for the Cox murder, Mr. Thomas outlined the evidence which they had against defendant respecting the murder of Elmer Cox. After listening to these statements of Mr. Thomas, the defendant said, "Now you have got the right man." In further conversation with the defendant, Mr. Thomas asked him if he was willing to make a statement, to which defendant replied that he was willing to do so. A shorthand reporter was called in, and defendant's statement was taken down in shorthand, and afterwards transcribed and submitted to the defendant, who signed it before those present. This statement was shown to have been voluntarily made without any promises of reward or of immunity and without any threats or compulsion and after he had been informed that it might be used against him in case he was tried for murder. In this statement the defendant admitted he was in the Durkee home at Sacramento on the evening of January 3, 1936, "just prowling around" when he heard someone in the hall; "There was a man standing with a gun. He made no effort to drop it and I was considerably excited. I shot before I realized what I was doing." He further stated that he shot four times. "The man he shot said, 'Don't shoot.' But I was under the impression that he was shooting at me because I thought I heard bullets whizzing over my right shoulder. I later discovered that what I had thought to be bullets were merely the cartridges ejected from my own gun." This statement

was admitted in evidence at the defendant's trial without objection. The defendant also took the stand as a witness and told practically the same story as that contained in the written statement. He further stated at the trial that when Cox came into the Durkee home he was not alone, but said ''I don't know which person came in first, the maid or the man, but the first one that came in turned on the light.'' At the trial the prosecution called as witnesses, Mary Mendonca, Captain of the Guards Ralph H. New, W. A. Thomas of Sacramento police department and Youther Rowell, the fellow prisoner of the defendant to whom the defendant gave the information which led to the latter's arrest. The testimony of these witnesses substantiated the facts hereinbefore set forth.

No contention is made that the evidence is not sufficient to support the verdict. In fact it would be futile to so contend in the face of the overwhelming evidence against the defendant. Not only did he make a full confession of the crime to the officers who confronted him while in San Quentin but this confession was reduced to writing and signed by him. It was admitted in evidence at the trial without any objection thereto by the defendant or any claim that it was not free and voluntary and binding upon him. In addition to this confession, the witness Mary Mendonca positively identified him as the person who shot and killed Elmer Cox in the Durkee home, and at the trial, the defendant took the stand as a witness, admitted the shooting of Cox, and his only explanation of his act was that he was frightened at the sudden appearance of Cox and Miss Mendonca. He further attempted to explain his reason for firing three shots after his first shot had felled Cox to the floor by the statement that he heard something whizzing over his right shoulder which he thought were bullets from Cox's gun, but later concluded that what he thought were bullets whizzing by him were cartridges from his own gun.

Appellant contends, however, that the trial court committed prejudicial error in admitting evidence of another crime over his objections. This contention is based upon the evidence given by the prisoner Rowell, wherein the latter testified that the defendant stated to him that there was a girl in the hall, referring to the hall in the Durkee home, whom he almost ran into in getting out of the hall, and the

defendant said, as testified by Rowell, ''When you leave San Quentin I want you to do me a favor. I would like for you to get rid of this witness. . . . That witness is out there, and I have to get rid of her some way.'' The district attorney, in his opening statement to the jury referred to this conversation between the defendant and Rowell, and stated that this evidence would be produced for the jury's consideration as tending to prove defendant guilty of the crime for which he was then being tried. It is not clear just what ''other crime'' appellant contends that this evidence tended to prove, but assuming that it did tend to connect defendant with some other crime, it was clearly admissible as a declaration of the defendant tending to prove his guilt of the crime of which he was then on trial.

''The rule against the admission of evidence of other crimes does not exclude such evidence when it logically tends to prove any fact necessary or pertinent to the proof of the crime for which a defendant is being tried.'' (8 Cal. Jur., p. 60, sec. 168.)

■ At the trial the defendant in answer to questions propounded to him by his attorney testified to his age, his place of birth, the names of his parents, the occupation of his father, and various places at which he had resided during his lifetime. He was also asked further questions in regard to his past history, none of which bore even indirectly upon any circumstance or fact connected with the crime for which he was then being tried. Objections to such questions were sustained by the trial court and the defendant now contends that the court erred in sustaining such objections. This contention is without merit. It was within the discretion of the trial court to exclude evidence of certain facts connected with the defendant's past history, which were wholly disconnected with the crime for which he was on trial. (1 Wharton's Criminal Evidence, 11th ed., sec. 227, p. 272.)

Appellant admits that the rule is as stated above, but claims that the trial court refused to exercise its discretion but sustained objection to such questions on the ground that the answers were not proper evidence in the case. The record does not support this claim. It is based upon the casual statement of the trial court that the Supreme Court had held such evidence improper. The reporter's transcript shows that the trial court permitted the defendant to testify to much of his

past life, but declined to permit him to testify as to other portions of his past. Notwithstanding the casual remarks of the trial judge that the Supreme Court had held such evidence improper, it appears from a reading of defendant's testimony that the trial court did exercise its discretion in the admission of evidence regarding his past by permitting him to testify as to certain events occurring in his past life and sustaining objections as to others.

■ The court, at the instance of the prosecution gave the following instruction:

"You are instructed that section 190 of the Penal Code of the State of California, provides that a person guilty of murder in the first degree shall suffer death, or confinement in the state prison for life, at the discretion of the jury trying the same. Therefore, if you do find the defendant guilty of murder in the first degree, you have the discretion to determine the nature of his or their punishment, *and if in your discretion or judgment find there is any fact or circumstance in the case which ought to mitigate the extreme penalty of death, you will, by your verdict, indicate the same but if you find no such mitigation in the facts of the case, and think the death penalty should be inflicted you will simply find him guilty of murder in the first degree.*"

Appellant contends that the italicized portion of said instruction is erroneous and the giving thereof was highly prejudicial to the rights of the defendant. This instruction is substantially like an instruction considered in the case of *People* v. *Bollinger*, 196 Cal. 191 [237 Pac. 25], and found on page 205 of the opinion in that case. It was held in the Bollinger case that the giving of such instruction was not reversible error. At the same time this court in refusing to reverse that case by reason of said instruction expressed itself in the following pointed and emphatic language: "While we are satisfied that the giving of such instructions is opposed to the provisions of section 190 of the Penal Code, we are not prepared to depart from the decisions on this point. In other words, we consider as settled that the giving of such instructions is not error. We have, however, gone into the subject in the hope, if not the expectation, that the practice of giving such instructions may be abated, thus giving assurance that the penalty reflects the decision of the jury alone and at the same time sparing this court the neces-

sity of repeatedly passing on such assignments of error. And considering the numerous occasions this court has held that section 190 of the Penal Code confers on the jury alone the discretion of determining the punishment in cases of guilt of murder in the first degree, trial courts, especially where a human life is at stake, should not interfere with the discharge of that solemn duty by the jury.''

Just why this and similar warnings by this court have not been observed by prosecuting officers and trial courts, we are at a loss to understand. We are not prepared to say that cases, in which this instruction so frequently and vehemently condemned by this court may be given, may not arise, in which, due to the unusual nature of the evidence therein respecting the facts and circumstances in mitigation of the crime, the court will refuse to adhere to its past practice of sustaining death penalty judgments. But in the instant case, in view of the condition of the evidence which is so overwhelmingly against the defendant as to leave no doubt in our minds that the jury would have found the defendant guilty of murder in the first degree without recommendation, even if such instruction had not been given, we are of the opinion that the defendant suffered no prejudice by reason of the inclusion of this instruction in the trial court's charge to the jury.

The judgment and order denying defendant's motion for a new trial are affirmed.

Edmonds, J., Shenk, J., Seawell, J., Waste, C. J., and Langdon, J., concurred.