47 Cal.2d 209 (1956)
THE PEOPLE, Respondent,
v.
EARL COMPTON GREEN, JR., Appellant.
Crim. No. 5782. 
Supreme Court of California. In Bank. 
Oct. 19, 1956.
 Edwin F. Beach and Ben E. Nordman, under appointment by the Supreme Court, for Appellant.
 Edmund G. Brown, Attorney General, William E. James, Deputy Attorney General, and Roy A. Gustafson, District Attorney (Ventura), for Respondent.
 SCHAUER, J.
 Defendant was charged with the murder of Joseph LaChance. He pleaded not guilty and not guilty by reason of insanity. He was tried before a jury which found that he was guilty of first degree murder and expressly fixed the penalty at death, and further found that he was sane at the time he committed the offense. Defendant's motion for new trial was denied and he was sentenced to death. This appeal, wherein defendant asserts insufficiency of the evidence and various errors of law which are hereinafter discussed, is taken pursuant to the provisions of subdivision (b) of section 1239 of the Penal Code. We have concluded that the judgment and order denying a new trial should be affirmed insofar as relates to the conviction of murder of the first degree but must be reversed, and the cause remanded for a new trial on the issue of penalty only, because of the instruction that "The discretion which the law invests in you ... is to be employed only when you are satisfied that the lighter punishment should be imposed. If you find the defendant guilty of first degree murder and do not find extenuating facts or circumstances to lighten the punishment it is your duty to find a verdict of murder in the first degree and fix the penalty at death." *213
 The following summary of the evidence refutes defendant's contention that it is insufficient to support the finding that defendant was guilty of first degree murder: On August 20, 1954, defendant went to work as a kitchen helper at a country club in Pasadena. There he met LaChance, who was employed as a guard. LaChance learned that defendant was looking for a place to live and at the suggestion of LaChance defendant on August 28, 1954, moved into an apartment-room next to a cabin rented by LaChance. Defendant had been living in an apartment with his wife and her small daughter by a former marriage; he testified that he left there because he was in California in violation of a Florida parole and he feared that his mother-in-law would report him to the Florida parole officer.
 On September 1, 1954, LaChance and defendant drove to Ojai in LaChance's car to look for work at an inn where LaChance had previously been employed. They stopped several times for beer. LaChance bore the expense of the trip; defendant had no money. At the inn they learned that the manager in charge of employment would not be in for two hours. They drank more beer, then drove into the country and shot at cans with LaChance's shotgun and played with a baseball and baseball bat. They walked to a creek to obtain drinking water, defendant carrying the bat. LaChance saw a water tank. It is the prosecution's theory (supported by circumstantial evidence and by a voluntary statement of defendant, which statement was made March 29, 1955, and which, insofar as it relates to motive, is contrary to defendant's testimony and other statements), that as LaChance was bending over a faucet on the tank, with his back to defendant, defendant hit him twice over the head with the bat; defendant's purpose was "to take that money" and "get my wife and kid and leave California." According to defendant's testimony and other statements of defendant, he struck LaChance because LaChance proposed that they engage in a homosexual act. Either of the two blows was of sufficient force to have been fatal.
 As related by defendant in his statement of March 29, he went through LaChance's pockets and took his money and his wrist watch. According to defendant's testimony, he had no recollection of taking money from LaChance, and LaChance had given defendant the watch three days before his death.
 Defendant returned to Pasadena in LaChance's car. The *214 next day, September 2, 1954, he left California in the car with his wife and her daughter. As he traveled across the country he sold tools which were in the car, pawned the watch, and finally sold the car, using various assumed names. He was apprehended in Texas in March, 1955.
 The jury could, and presumptively did, believe the prosecution theory of the evidence that the murder was of the first degree because committed in the perpetration of robbery (Pen. Code, 189). They were fairly instructed as to the law applicable in the event they accepted the theory of defendant as expressed in his testimony, that "If you find that the defendant ... had not formed an intention to take the money or other property of Joseph O. LaChance until after he struck Joseph O. LaChance for the last time, and even if you find that [defendant] ... did in fact kill Joseph O. LaChance then you are instructed that the killing of Joseph O. LaChance was not murder in the first degree committed in the perpetration of a robbery." (See People v. Kerr (1951), 37 Cal.2d 11, 13-14 [229 P.2d 777]; People v. Carnine (1953), 41 Cal.2d 384, 388 [260 P.2d 16]; People v. Hudson (1955), 45 Cal.2d 121, 124 [287 P.2d 497].) Manifestly, the jury could and did reject defendant's theory.
 [1] According to the confession of defendant which was in evidence, he murdered in the commission of a robbery in which he took the wrist watch of LaChance (which defendant later admittedly pawned). At the trial defendant repudiated this confession and said that a few days before the killing LaChance had loaned him the watch and that defendant had thereafter worn it when he visited his wife and mother-in-law. In argument the district attorney called attention to the fact that defendant called no one to corroborate his story that he had worn the watch for a few days before the killing. Although the argument was not particularly and expressly directed to the failure of defendant's wife to testify, defendant, citing People v. Wilkes (1955), 44 Cal.2d 679, 687 [284 P.2d 481], urges that it constituted improper comment on her failure to take the stand. Insofar as this comment could be understood by the jury as referring to defendant's failure to produce his wife's testimony, it was undoubtedly erroneous. However, in the light of the entire record, we are satisfied that such brief and indirect reference to the matter was not sufficiently important to prejudice defendant in the eyes of the jury and result in a miscarriage of justice (Cal. Const., art. VI, 4 1/2). In the Wilkes case there was not, as there *215 was here, a mere single, unspecific, passing reference; rather, there was particularized comment which "erroneously and deliberately struck at the heart of defendants' only defense" and which was aggravated by erroneous comment of the trial court (p. 688 of 44 Cal.2d).
 Over objection the prosecuting attorney, in connection with the opening statement, was allowed to show the jury a motion picture depicting locations where the events in question took place and articles which were subsequently introduced in evidence as exhibits. Later the film was properly identified and admitted in evidence. Also in connection with the opening statement the prosecuting attorney showed photographs of the wounds of deceased and of defendant in prison garb.
 [2] Even where a map or sketch is not independently admissible in evidence it may, within the discretion of the trial court, if it fairly serves a proper purpose, be used as an aid to the opening statement. (State v. Sibert (1933), 113 W.Va. 717 [169 S.E. 410, 412].) [3] The purpose of the opening statement "is to prepare the minds of the jury to follow the evidence and to more readily discern its materialty, force and effect" (People v. Arnold (1926), 199 Cal. 471, 486 [250 P. 168]), and the use of matters which are admissible in evidence, and which are subsequently in fact received in evidence, may aid this purpose. In the circumstances, we conclude that it was within the discretion of the trial court to permit the use, in connection with the opening statement, of the pictures which were subsequently received in evidence.
 [4] Defendant claims that the trial court erred in excusing Juror Number 4. After 12 persons had been sworn to serve as jurors and the selection of alternate jurors was proceeding, this juror asked if she could be excused "If I had reconsidered one of my answers." The following shows the essential portions of the colloquy between the court and the juror which ensued:
 "The Court: Did you make, in answer to some question, did you make a false reply?"
 "Juror Number Four: I believe I have now, yes. I believe that you asked me if there was any reason that I couldn't be a juror and at that time I felt there was none but now, being up here, it has made a difference to me. I don't feel that I could qualify. ..."
 "The Court: ... [Y]our statement now in substance is this, ... that you now would be unable to serve as a juror *216 and act fairly and impartially to all sides of this case, is that correct?"
 "Juror Number Four: That is right, sir. ... [A]s long as there is a doubt in my mind, I don't think that I would be fair to the prosecution."
 The court did not then act upon the request of Juror Number 4. Two alternate jurors were selected and sworn. Juror Number 4 was again questioned and restated her position. Thereupon the trial court ruled, over defendant's objection, that "The Court finds that there is good and sufficient cause and reason, pursuant to the provisions of Section 1089 of the Penal Code and for other good and sufficient reasons, to discharge the Juror No. 4." Juror Number 4 was replaced with one of the two alternate jurors, selected by placing the names of the alternate jurors in a box and drawing one.
 Section 1089 of the Penal Code provides in material part, "If at any time, whether before or after the final submission of the case to the jury, a juror dies or becomes ill, or upon other good cause shown to the court is found to be unable to perform his duty, or if a juror requests a discharge and good cause appears therefor, the court may order him to be discharged and draw the name of an alternate, who shall then take his place in the jury box, and be subject to the same rules and regulations as though he had been selected as one of the original jurors." Section 1123 provides in material part, "If before the jury has returned its verdict into court, a juror becomes sick or upon other good cause shown to the court is found to be unable to perform his duty, the court may order him to be discharged. If any alternate jurors have been selected as provided by law, one of them shall then be designated by the court to take the place of the juror so discharged." Bias of Juror Number 4, as disclosed by her statements that she had come to the conclusion that she would be unable to act impartially and that "I don't think that I would be fair to the prosecution," supports the trial judge's finding that there was good cause for her discharge.
 [5] Defendant urges that the district attorney was guilty of prejudicial misconduct in arguing as follows: "[A]s the Judge will no doubt tell you, the law in California is that a prisoner given a life imprisonment sentence may be paroled after seven years. And why do I say that that is no punishment for this defendant? Because you have before you evidence of what regard he has for the law, what punishment it is for him to be incarcerated for a few years such as he was *217 in the Florida prison. [fn. 1] Nothing. Nothing whatever. It just means that much time gone by on the calendar and he gets out again so that he can again pursue a criminal course. ... The proper punishment for him is not the relatively slight imposition of a slap on the wrist that a life imprisonment sentence would be. The proper punishment for him is the death penalty." Defendant's objections to the foregoing argument and other argument of the district attorney to the same effect were overruled. It appears that the district attorney in his argument as to punishment had in mind the rule that "To aid the jury in fixing the punishment ..., the court may instruct the jury [as it did in the present case] as to the consequences of the different penalties that may be imposed so that an intelligent decision may be made." (People v. Barclay (1953), 40 Cal.2d 146, 158 [252 P.2d 321].) There is no showing that defendant asked to be allowed to produce evidence, or to comment, as to the minimum, average and maximum terms of imprisonment actually being served for first degree murder in California. Inasmuch as the prosecution, over objection of the defendant, opened the subject of the minimum possible term of imprisonment under the law for such offense, it is to be presumed that the defendant would have been accorded opportunity to show and comment on the actual facts of the matter even if it had been necessary to reopen the trial to enable him so to do. In the circumstances, it does not appear that the prosecution's argument gives ground for reversal.
 The most serious complaint of defendant concerns the italicized portions of the following given instruction:
 "The law of this state provides that every person guilty of murder in the first degree shall suffer death or confinement in the state prison for life, at the discretion of the jury that finds him guilty. If you should find the defendant guilty of murder in the first degree, it will be your duty to determine which of the two penalties shall be inflicted, the death penalty or confinement in the state prison for life."
 "The discretion which the law invests in you is not an arbitrary one and is to be employed only when you are satisfied that the lighter punishment should be imposed. If you find the defendant guilty of first degree murder and do not find extenuating facts or circumstances to lighten the punishment *218 it is your duty to find a verdict of murder in the first degree and fix the penalty at death." (Italics added.)
 The idea stated in the last two sentences of the instruction was repeatedly emphasized by the prosecuting attorney in his voir dire examination of prospective jurors and in his argument to the jury at the close of testimony. It is an idea as to which the cases in this state have been in conflict since prior to 1900 but as to which the statute has been clear since 1874.
 As enacted in 1872 section 190 of the Penal Code read in material part, "Every person guilty of murder in the first degree shall suffer death ..." It was amended in 1874 (Amendments to the Codes, 1873- 1874, p. 457) to provide that "Every person guilty of murder in the first degree shall suffer death or confinement in the state prison for life, at the discretion of the jury trying the same; or, upon a plea of guilty, the court shall determine the same ..." There has never been any suggestion or intimation within the language of the statute since its 1874 amendment that the discretion of the jury was conditional on, or had to be guided by, any particular circumstances, or that the jury had to find, in the words of the instruction here, "extenuating facts or circumstances to lighten the punishment." [6] It is not a function of the jury either to lighten the punishment or to increase the punishment; they have no such power. [7] The statute clearly and equally states two alternatives as punishment; it gives preference to neither. It is the function and responsibility of the jury to select, and to designate in their verdict, which of the two punishments prescribed by the statute shall be imposed in any given case.
 Construing section 190 this court said in People v. Bollinger (1925), 196 Cal. 191, 207 [237 P. 25], "Before the amendment of that section in 1873-1874 (Stats. 1873-1874, p. 457) it read as follows: 'Every person guilty of murder in the first degree shall suffer death ...' It is clear beyond question that by the language of the amended section--'Every person guilty of murder in the first degree shall suffer death, or confinement in the state prison for life, at the discretion of the jury trying the same; ...'--two changes were made in the law as to the punishment for murder in the first degree--first, that the punishment may be either death or life imprisonment; and, second, that the discretion of determining which punishment shall be imposed was vested in the jury alone. For, as declared in ... [Winston v. United States (1899), *219 172 U.S. 303 (19 S.Ct. 212, 43 L.Ed. 456)], the law places no restriction upon the jury's exercise of such discretion, nor does it attempt to confine its exercise to cases presenting palliating or mitigating circumstances ... The legislature has 'confided the power to affix the punishment within these two alternatives to the absolute discretion of the jury. ...' (People v. Leary, 105 Cal. 486, 496 [39 P. 24].)"
 In Winston v. United States (1899), supra, 172 U.S. 303 [19 S.Ct. 212, 43 L.Ed. 456], relied upon in the Bollinger case, the United States Supreme Court declared its views upon the effect of a liberalizing amendment to the federal law concerning the punishment for murder; it said, "These were three cases of indictments ... for murders committed since the passage of the act of ... January 15, 1987, chap. 29, by the first section of which, 'in all cases where the accused is found guilty of the crime of murder ... the jury may qualify their verdict by adding thereto "without capital punishment"; and whenever the jury shall return a verdict qualified as aforesaid the person convicted shall be sentenced to imprisonment ... for life.' 29 Stat. at L. 487 ..."
 "[P. 457 of 43 L.Ed.] The judge instructed the jury ... 'That qualification cannot be added unless it be the unanimous conclusion of the twelve men constituting the jury. I think that it should not be added unless it be in cases that commend themselves to the good judgment of the jury, cases that have palliating circumstances which would seem to justify and require it.' ..."
 "[P. 459 of 43 L.Ed., reversing the trial court] The right to qualify a verdict of guilty, by [p. 460 of 43 L.Ed.] adding the words 'without capital punishment,' is thus conferred upon the jury in all cases of murder. The act does not itself prescribe, nor authorize the court to prescribe, any rule defining or circumscribing the exercise of this right; but commits the whole matter of its exercise to the judgment and the consciences of the jury. The authority of the jury to decide that the accused shall not be punished capitally is not limited to cases in which the court, or the jury, is of opinion that there are palliating or mitigating circumstances. But it extends to every case in which, upon a view of the whole evidence, the jury is of opinion that it would not be just or wise to impose capital punishment. How far considerations of age, sex, ignorance, illness, or intoxication, of human passion or weakness, of sympathy or clemency, or the irrevocableness *220 of an executed sentence of death, or an apprehension that explanatory facts may exist which have not been brought to light, or any other consideration whatever, should be allowed weight in deciding the question whether the accused should or should not be capitally punished, is committed by the act of Congress to the sound discretion of the jury, and of the jury alone."
 In Andres v. United States (1948), 333 U.S. 740 [68 S.Ct. 880, 92 L.Ed. 1055], the United States Supreme Court again considered the statute involved in the Winston case. A conviction bearing the death penalty was reversed because the trial court had not clearly instructed that the jury must be unanimous upon the issue of penalty as well as upon that of guilt. The court said: "[p. 883 of 68 S.Ct.] If a qualified verdict is not returned, the death penalty is mandatory. The Government argues that 567 properly construed requires that the jury first unanimously decide the guilt of the accused and, then, with the same unanimity decide whether a qualified verdict shall be returned. As the statute requires the death penalty on a verdict of guilty, the contention is that the jury acts unanimously in finding guilt and the law exacts the penalty. It follows, that if all twelve of the jurors cannot agree to add the words 'without capital punishment,' the original verdict of guilt stands and the punishment of death must be imposed. The petitioner contends that 567 must be construed to require unanimity in respect to both guilt and punishment before a verdict can be returned. It follows that one juror can prevent a verdict which requires the death penalty, although there is unanimity in finding the accused guilty of murder in the first degree. ... [p. 884 of 68 S.Ct.] Unanimity in jury verdicts is required where the Sixth and Seventh Amendments apply. In criminal cases this requirement of unanimity extends to all issues--character or degree of the crime, guilt and punishment--which are left to the jury. A verdict [under the federal statute] embodies in a single finding the conclusions by the jury upon all the questions submitted to it. We do not think that the grant of authority to the jury by 567 to qualify their verdict permits a procedure whereby a unanimous jury must first find guilt and then a unanimous jury alleviate its rigor. ... This construction is more consonant with the general humanitarian purpose of the statue and the history of the Anglo- American jury system than that presented by the Government. ... [p. 885 of 68 S.Ct.] It seems to us, ... that *221 where a jury is told first that their verdict must be unanimous, and later, in response to a question directed to the particular problem of qualified verdicts, that if their verdict is first-degree murder and they desire to qualify it, they must be unanimous in so doing, the jury might reasonably conclude that, if they cannot all agree to grant mercy, the verdict of guilt must stand unqualified. That reasonable men might derive a meaning from the instructions given other than the proper meaning of 567 is probable. In death cases doubts such as those presented here should be resolved in favor of the accused."
 It is therefore apparent that the United States Supreme Court in the Andres case (1948) not only continued zealously to follow but gave further emphasis to the policy which it announced in the Winston case (1899) and which this court declared in the Bollinger case (1925). And this court has never disapproved the above quoted view of the Bollinger case; on the contrary, it has reiterated that view.
 Yet, despite the clear language of the liberalizing amendment of section 190 of the Penal Code (Stats. 1873-1874, p. 457) and the equally clear judicial recognition of the intent of the Legislature in using that language, all as discussed in the Bollinger case (1925), supra, 196 Cal. 191, 208, this court has affirmed judgments (hereinafter cited) imposing the death sentence although the instructions contained the error which is found in the instruction here and also erroneously informed the jury that in the absence of extenuating circumstances it was their duty to find a simple verdict of murder in the first degree and to "leave with the law the responsibility of affixing the punishment."
 The erroneous interpretation of section 190 originated in People v. Welch (1874), 49 Cal. 174. The case was tried shortly after the subject amendment to section 190 took effect. [fn. 2] The principal contention of the defendant on appeal related to the function and duty of the jury, and the validity of the verdict, under the new law. It was stated by his counsel as a quotation from Bishop (Crim. Proc., vol. 1, 838) "In those states and those particular cases, in which the law submits the amount of punishment to be inflicted upon the defendant, to the determination of the jury, the verdict, *222 when it is one of guilty, must specify the punishment, else it will be defective and insufficient" (p. 176 of 49 Cal.). The verdict which was the subject of defendant's attack read: "We, the jurors, do find the defendant Welch guilty of murder in the first degree, as charged in the indictment." The verdict was absolutely silent as to the penalty to be imposed. The court concluded that the silent verdict was valid because the jurors did not have to agree on the punishment; that if the jury failed to agree on the penalty or simply failed to declare that the punishment should be life imprisonment, the court must sentence the defendant to death.
 The language of the court is (p. 178 of 49 Cal.): "Section 190 of the Penal Code, as amended by the Act of March 28, 1874, reads: 'Every person guilty of murder in the first degree shall suffer death, or confinement in the State Prison for life, at the discretion of the jury trying the same ...' [p. 179]. The nature of that discretion is to be ascertained by reference to the language of the statute. In Virginia it was held, that in an action qui tam the verdict should fix the amount of damages. (Scott's case, 5 Grat. 6, 797.) Also, that where the duty was imposed on the jury of fixing the term of imprisonment, and the verdict did not ascertain such term, it should be set aside. (Mills' case, 7 Leigh 751.)"
 "But the Act amending Section 190 of the Penal Code does not give the general discretion which juries exercised under the Virginia statute. Here their discretion is limited, at most, to determining which of two punishments shall be inflicted; and we think that it is still more restricted, and is to be employed only where the jury is satisfied that the lighter penalty should be imposed. It would seem that, in view of the apparently growing disinclination to find verdicts of murder in the first degree, when the necessary result is capital punishment, and the existence of a feeling that there were nicer distinctions in the degree of malignancy exhibited in murders than were made by the letter of the statute definitions, the Legislature intended to give to the jury, when the verdict was murder of the first degree, the power of relieving the defendant of the extreme penalty, and of substituting another punishment in its stead. A verdict fixing the punishment at imprisonment for life is somewhat analogous to the French verdict, 'Guilty with extenuating circumstances,' and is the equivalent of the Louisiana verdict, 'Guilty without capital punishment,' held good in State v. Rohfrischt (12 La. An. 382); and authorized by the statute which provides, 'In *223 all cases where the punishment denounced by law is death, it shall be lawful for the jury to qualify their verdict by adding thereto, "without capital punishment." And whenever the jury shall return a verdict qualified as aforesaid, the person convicted shall be sentenced to hard labor for life in the State Penitentiary.' (Rev. Stat. of La. p. 163.)"
 "This view of the question is not unsustained by authority in California. By the Act of April 22, 1851, it was enacted: 'Every person who shall feloniously steal, etc., shall be deemed guilty of grand larceny, and upon conviction thereof, shall be punished by imprisonment in the State prison for any term, not less than one year nor more than ten years, or by death, in the discretion of the jury.' And in The People v. Littlefield (5 Cal. 355), this Court said: 'It would seem, from the language of the Act, that it was the intention of the Legislature that the jury should only assess the punishment when, in the exercise of their discretion, they thought that the defendant deserved the punishment of death. If they did not agree to such punishment, upon finding the defendant guilty, then they should find a general verdict.' In that case, it was evidently considered that the object of the Legislature (actuated by the circumstance that certain kinds of property--as livestock--were peculiarly exposed, in portions of this State, or by some other motive equally just) was to confer upon the juries the power of affixing, at their discretion, a more severe penalty than had previously been imposed on those guilty of grand larceny. By parity of reasoning we may say, in view of the former punishment for the crime of murder of the first degree, and the history of legislation on the subject in this State and elsewhere, that it was the purpose of the Legislature (by the amendment of section 190) to permit the jury, in a case where the facts proved brought the crime of the defendant within the statutory definition of the higher offense, but they believed the punishment of death too severe, to declare that he should be imprisoned for life. We think, therefore, the statute should be construed as if it read: 'Shall suffer death, or (in the discretion of the jury) imprisonment in the State prison for life.' ... [p. 185, on denial of petition for rehearing.] It results from the construction we have given to Section 190 of the Penal Code (as amended) that a jury may--in the exercise of its discretion--declare that a defendant guilty of murder of the first degree shall be punished by confinement in the State prison for life. If a jury shall agree that a defendant is guilty of *224 murder of the first degree, but cannot agree that the punishment shall be imprisonment for life, or shall not declare that the punishment shall be such imprisonment, it will be the duty of the Court to pronounce judgment of death. The jury need not declare that death shall be inflicted--in cases where they cannot agree on imprisonment--since, if the verdict is silent in respect to the penalty, the Court must sentence the defendant to death." [fn. 3]
 Unqualifiedly contrary to the view announced in the Welch opinion is the language of section 190 itself. [8] There is nothing in the statute which authorizes holding that the jurors are not required to agree unanimously on the penalty just as they must agree unanimously on the questions of guilt and class and degree of offense (People v. Lee Gow (1918), 38 Cal.App.248, 250 [175 P. 917]; People v. Garcia (1929), 98 Cal.App. 702, 704 [277 P. 747]; People v. Richardson (1934), 138 Cal.App. 404, 409 [32 P.2d 433]), nor is there anything in the statute which makes death mandatory, or the presumed penalty, either in the absence of evidence of mitigating circumstances or upon failure of the jury to specify which one of the two authorized punishments shall be imposed.
 [9] Pertinent to the proposition that it is for the jury--not the law--to fix the penalty as between the two equally available alternatives is the following discussion by this court (speaking through Mr. Justice Shenk) in People v. Hall (1926), 199 Cal. 451, 456-458 [249 P. 859]: "From a consideration of our decisions it appears to be the settled law of this state that in the trial on a charge of murder it is first incumbent upon the jury to determine the guilt or innocence of the accused. If he be found guilty of murder in the first degree it is then incumbent on the jury to fix the penalty. ... Under the law the verdict in such a case must be the result of the unanimous agreement of the jurors and the verdict is incomplete unless, as returned, it embraces the two necessary constituent elements; first, a finding that the accused is *225 guilty of murder in the first degree, and, secondly, legal evidence that the jury has fixed the penalty in the exercise of its discretion. ... It was the duty of the jury to exercise its discretion and fix the penalty. Failing to do so no penalty was determined upon. The jury could not exercise its discretion and not exercise it in one and the same verdict. When a verdict, such as the one here under consideration [such verdict was, "We, the jury ..., find the defendant ... guilty of the crime of murder as charged in the indictment, of the first degree. But cannot come to an unanimous agreement as to degree of punishment"], discloses on its face that such discretion was not exercised as to either penalty it is not a verdict upon which the court is authorized to pronounce judgment of either death or life imprisonment. In receiving such a verdict and in imposing the sentence of death upon the defendant, the court usurped the function of the jury and its judgment was a nullity. The proceeding therefore resulted in a mistrial and the judgment must be reversed. ... We cannot agree that the defect in the verdict was merely an error in 'matter of procedure' as contemplated by ... section 4 1/2 [of art. VI of the state Const.]. On the contrary the defect involved matter of substantial and substantive right. It was in effect the denial of a trial by jury. The amendment by which said section 4 1/2 was added to the constitution was not 'designed to repeal or abrogate the guarantees accorded persons accused of crime by other parts of the same constitution, or to overthrow all statutory rules of procedure and evidence in criminal cases' [citations]. Trial by jury is guaranteed to every person charged with a felony and the denial of that right is in itself a miscarriage of justice. ... [H]owever degraded and hardened a criminal the evidence may disclose an accused to be, he is entitled under the constitution to trial by jury. In legal effect this right was denied to the defendant in the case at bar. The proceedings before the trial court [which imposed the death sentence] amounted to the same as if the court had denied the defendant a trial by jury in the first instance and, having heard the evidence and found the defendant guilty, proceeded to impose the judgment of death. Such a judgment may not stand even though there be the clearest proof of guilt." The above quotation from the Hall case (199 Cal. 451, 456-458), together with that portion of the Bollinger case (196 Cal. 191, 207) which quotes section 190 of the Penal Code (as amended in 1873-1874) with the declaration that its meaning is "clear beyond question," *226 correctly states the law; the decision we make today at last requires compliance with that law.
 After the erroneous interpretation of section 190 of the Penal Code in the Welch case, the practice--not consistent but recurrent--of carrying the error into instructions to the jury began. In People v. Jones (1883), 63 Cal. 168, 169-170, it was held, concerning an instruction the precise language of which does not appear in the opinion, that "It was not error to instruct the jury that if they found the defendant guilty of murder in the first degree, with some extenuating fact or circumstance in the case, it was within their discretion to pronounce such a sentence as would relieve the defendant from the extreme penalty of the law."
 In People v. Murback (1883), 64 Cal. 369, 370, 371 [30 P. 608], this court affirmed a judgment imposing the death sentence where the jury had been instructed that "if you do find the defendant guilty of murder in the first degree, you have the discretion to determine the nature of his punishment; and if in your sound judgment and discretion there is any fact or circumstance in the case which ought to mitigate the extreme penalty of death, you will by your verdict indicate the same; but if you find no such mitigation in the facts of the case, and think the death penalty should be inflicted you will simply find him guilty of murder in the first degree." Yet this court also said, "whether he should suffer death or confinement in the State prison for life ... was to be determined at their discretion. With this power of discretion a court cannot interfere. The jury should be left entirely free to act according to their judgment. If they see fit to exercise the power at all, they have the exclusive right to determine, within the limits prescribed by the law which gives them the power, the punishment for which the defendant ought to be sentenced. And we find nothing in the challenged instruction which limited or restrained them in the exercise of that power."
 In People v. Brick (1885), 68 Cal. 190, 191 [8 P. 858], on the authority of People v. Welch (1874), supra, 49 Cal. 174, the court approved the following instruction: "If the jury find the defendant guilty of murder in the first degree, and they also find the further fact that there is some extenuating fact or circumstance in the case, it is within their discretion to pronounce such a sentence as will relieve the defendant from the extreme penalty of the law. The Penal Code invests a jury in a criminal case for murder with that discretion, but *227 the discretion is not an arbitrary one, and is limited to determining which of two punishments shall be inflicted, and is to be employed only when the jury is satisfied that the lighter penalty should be imposed. If the evidence shows the defendant to be guilty of murder in the first degree, but does not show some extenuating fact or circumstance, it is the duty of the jury to find a simple verdict of murder in the first degree, and leave with the law the responsibility of affixing the punishment." (Italics added.)
 Again in People v. French (1886), 69 Cal. 169 [10 P. 378], this court, still following the Welch decision, and making unmistakably clear (if there were ever any doubt) the meaning which the court attributed to the Welch decision and to the instruction from the Brick case above quoted, approved an instruction which specifically told the jury (p. 176 of 69 Cal.): "The jury has the right, in case they find a verdict of guilty of murder in the first degree, to do so without fixing the penalty ..." This court said (p. 179): "Of the duty of the court upon receiving such a verdict [a verdict silent as to penalty], there could have been no doubt in the mind of the judge. As declared by this court in People v. Welch, 49 Cal. 185: 'If a jury shall agree that a defendant is guilty of murder in the first degree, but cannot agree that the punishment shall be imprisonment for life, or shall not declare that the punishment shall be such imprisonment, it will be the duty of the court to pronounce judgment of death. The jury need not declare that death shall be inflicted in cases where they cannot agree on imprisonment,--since, if the verdict is silent in respect to the penalty, the court must sentence the defendant to death.'"
 "In other words, a person convicted of murder in the first degree shall not escape punishment because the jury that convicted him by a valid verdict may have disagreed upon the question of punishment, or, which is equivalent to the same thing, returned a verdict which was silent as to the penalty."
 In the following cases this court affirmed judgments imposing the death sentence where instructions based on the Welch decision and incorporating substantially the language used in the Brick case instruction quoted above, or variants of it, were given, yet, as the bracketed quotations show, the court repeatedly disapproved the giving of such instructions: People v. Olsen (1889), 80 Cal. 122, 128 [22 P. 125]; People v. Bawden (1891), 90 Cal. 195, 197 [27 P. 204] ["If the question *228 presented were a new one, there would be strong reasons for holding that by section 190 of the Penal Code the Legislature intended to give to the jury the entire power of fixing the punishment in such a case, uninfluenced by the court; and that there is no warrant in the code for any distinction, in this regard, between one kind of murder in the first degree and another. But these instructions are literal copies of instructions given and approved by this court in People v. Brick, 68 Cal. 190 [8 P. 858]. ..."]; People v. Rogers (1912), 163 Cal. 476, 483-484 [126 P. 143]; People v. Harris (1914), 169 Cal. 53, 70 [145 P. 520]; People v. Wolfgang (1923), 192 Cal. 754, 762 [221 P. 907]; People v. Reid (1924), 193 Cal. 491, 496 [225 P. 859]; People v. Casade (1924), 194 Cal. 679, 682 [230 P. 9]; People v. Perry (1925), 195 Cal. 623, 640 [234 P. 890]; People v. Craig (1925), 196 Cal. 19, 28 [235 P. 721]; People v. Bollinger (1925), supra, 196 Cal. 191, 208-209 ["While we are satisfied that the giving of such instructions is opposed to the provisions of section 190 of the Penal Code, we are not prepared to depart from the decisions on this point. In other words, we consider as settled that the giving of such instructions is not error. We have, however, gone into the subject in the hope, if not the expectation, that the practice of giving such instructions may be abated, thus giving assurance that the penalty reflects the decision of the jury alone and at the same time sparing this court the necessity of repeatedly passing on such assignments of error. And considering the numerous occasions this court has held that section 190 of the Penal Code confers on the jury alone the discretion of determining the punishment in cases of guilt of murder in the first degree, trial courts, especially where a human life is at stake, should not interfere with the discharge of that solemn duty by the jury"]; People v. Arnold (1926), supra, 199 Cal. 471, 500 ["This court, while it has refused to reverse cases solely because of the giving of the instruction [similar to the one under consideration], has, nevertheless, advised against any suggestion coming from the court which might be regarded as a limitation upon the jury's right to exercise unhampered its discretion in determining whether the defendants should suffer death or be imprisoned in the state prison for life"]; People v. Gosden (1936), 6 Cal.2d 14, 30 [56 P.2d 211]; People v. Goodwin (1937), 9 Cal.2d 711, 715 [72 P.2d 551]; People v. Smith (1939), 13 Cal.2d 223, 229 [88 P.2d 682] [after quoting from the Bollinger case, "Just why this and similar warnings by *229 this court have not been observed by prosecuting officers and trial courts, we are at a loss to understand"]; People v. King (1939), 13 Cal.2d 521, 525 [90 P.2d 291]; People v. Smith (1940), 15 Cal.2d 640, 650 [104 P.2d 510].
 At the same time that it was tolerating, although frequently deploring, the giving of instructions such as the one here under consideration, the court in other cases held that by section 190 of the Penal Code, the Legislature "confided the power to affix the punishment within these two alternatives to the absolute discretion of the jury, with no power reserved to the court to review their action in that respect" (People v. Leary (1895), 105 Cal. 486, 496 [39 P. 24]; People v. Kamaunu (1895), 110 Cal. 609, 613 [42 P. 1090]; People v. Martin (1938), 12 Cal.2d 466, 470 [85 P.2d 880]; People v. French (1939), 12 Cal.2d 720, 775 [87 P.2d 1014]; see People v. Waller (1939), 14 Cal.2d 693, 703 [96 P.2d 344]).
 In People v. Kolez (1944), 23 Cal.2d 670 [145 P.2d 580]; People v. Williams (1948), 32 Cal.2d 78, 85 [195 P.2d 393]; and People v. Byrd (1954), 42 Cal.2d 200, 210 [266 P.2d 505] (see also People v. Lindley (1945), 26 Cal.2d 780, 793 [161 P.2d 227]), [fn. 4] the court again, over dissents, respectively, of Justice Traynor, Justice Schauer, and Justice Carter, refused to disturb judgments imposing the death penalty where the instructions required the jury to find extenuating facts as a condition to selecting the penalty of life imprisonment; but in none of those cases or in any other case has the court declared that the law was not, as stated in People v. Leary (1895), supra, 105 Cal. 486, 496, that the fixing of the punishment was confided "to the absolute discretion of the jury." The instructions in the Kolez, Williams, and Lindley cases contained the further statement that "If the evidence shows the defendant to be guilty of murder in the first degree, but does not show some extenuating facts or circumstances, it is the duty of the Jury to find a simple verdict of murder in the first degree, and leave with the law the responsibility of fixing the punishment." [fn. 5] *230
 Such further statements, are merely corollary or slightly variant expressions of the doctrine of the Welch case as further elucidated in Murback, Brick, and French. When given, they serve to accentuate the effect of, but otherwise add little if anything to, the basic error inherent in the instruction given in this case. The basic error in the criticized instruction is the perpetuation of the Welch case concept that the law still fixes death as the primary punishment for murder of the first degree, which penalty automatically attaches upon a finding of guilt of that offense; that the amendment of 1874 invested the jury not with absolute discretion to select either of the two penalties but with only a conditional discretion to "relieve the accused of the extreme penalty"; and that the jury were not entitled to exercise any discretion as to punishment unless they found extenuating facts and circumstances. All of that concept is inherent in the first of the italicized sentences of the instruction quoted supra, pages 217-218: "The discretion which the law invests in you ... is to be employed only when you are satisfied that the lighter punishment should be imposed." This erroneous concept should have been regarded as overruled (if not by People v. Leary (1895), supra, 105 Cal. 486, 496) at least as early as People v. Hall (1926), supra, 199 Cal. 451, 456-458, wherein the court in a then liberal, if not revolutionary, decision took a definite turn toward the statute and the Leary (105 Cal. 486) line of cases and away from the Welch-Murback-Brick-French line. It reversed a conviction of murder in the first degree, with death penalty, on the ground that the jury had not exercised their discretion and fixed the penalty. The court, as has been hereinabove noted, said (p. 456 of 199 Cal.): "[I]t appears to be the settled law of this state that in the trial on a charge of murder it is first incumbent upon the jury to determine the guilt or innocence of the accused. If he be found guilty of murder in the first degree it is then incumbent on the jury to fix the penalty. ... Under the law the verdict in such a case must be the result of the unanimous agreement of the jurors ... [p. 457]. It was the duty of the jury to exercise its discretion and fix the penalty." This holding is irreconcilable with the Welch, etc. doctrine *231 discussed supra, and with the instruction given in the case at bar. Such instruction, as is apparent from its language above quoted, precludes the jury from exercising any discretion unless they find mitigating facts and circumstances and "are satisfied that the lighter punishment should be imposed." The opinion, however, stopped short of a complete departure from Welch (see p. 456) and the erroneous instruction has persisted to plague us.
 It is indisputable that if it is true that the jury's discretion as to choice of penalty is absolute, it is manifestly inconsistent to instruct the jury that they must (or that the law does) impose the death penalty unless they find extenuating circumstances. The law, as hereinabove emphasized, indicates no preference whatsoever as between the two equally fixed alternatives of penalty. Although the two irreconcilable lines of authority have been extant for many years, this court has criticized the one line but not the other. Its criticisms of and protests against the giving of the type of instruction given in People v. Brick (1885), supra, 68 Cal. 190, and in this case are quoted above; on the other hand this court has never held that it was error to instruct in accordance with the statute and with the views supporting the statute expressed in such cases as Leary (1895), supra, 105 Cal. 486; Bollinger (1925), supra, 196 Cal. 191; Martin (1938), supra, 12 Cal.2d 466, and similar cases cited above.
 Understandably, under the doctrine of stare decisis, this court has been reluctant to overrule the line of cases stemming from the Welch opinion. We recognize also that trial judges and prosecuting officers have justifiably understood that legally they could continue to follow practices based on that line although, commendably, many of them have voluntarily acceded to the admonitions hereinabove quoted. The recurrence of the problem, however, has not been prevented by the admonitions or by any of the decisions to date. Such problem, it appears, will be a recurrent one so long as the statute, with its admonitorily-supporting line of decisions, purports to require one practice while the cases, even those which pronounce the admonitions, tolerate another. This faces us with a question as to what ruling will best serve the administration of justice and at the same time be "consonant with the general humanitarian purpose of the statute." (See Andres v. United States (1948), supra, 333 U.S. 740 [68 S.Ct. 880, 92 L.Ed. 1055].) [10] We are satisfied that it is in accord with the better judicial policy and the more certain and expeditious *232 administration of justice to refuse to continue longer the two inconsistent positions which have been delineated. The one line of instructions as to the capacity and duty of the jury cannot be right if the other is right. In this circumstance we conclude that the statute and the uncriticized decisions supporting it should prevail and that we should hold it error to instruct contrary to the terms of the statute. People v. Welch, 49 Cal. 174; People v. Murback, 64 Cal. 369 [30 P. 608]; People v. Brick, 68 Cal. 190 [8 P. 858]; and People v. French, 69 Cal. 169 [10 P. 378], and all other cases approving the instruction herein held to be erroneous, including People v. Kolez, 23 Cal.2d 670 [145 P.2d 580]; People v. Lindley, 26 Cal.2d 780 [161 P.2d 227]; People v. Williams, 32 Cal.2d 78 [195 P.2d 393]; and People v. Byrd, 42 Cal.2d 200 [266 P.2d 505], are overruled insofar as they are inconsistent with the conclusion above declared.
 [11] Since the fixing of the punishment by the selection of one of the two alternatives is within the absolute discretion of the jury, an instruction such as the one given here, which directs them to fix the penalty at death unless they find extenuating circumstances, is (when the death penalty is fixed) manifestly prejudicial to defendant and evidential of a miscarriage of justice. This prejudicial error, however, goes only to the choice of penalty. As already shown, there is in this case no prejudicial error which affected the jury's determinations as to the issues of guilt, class, and degree of homicide. In these circumstances, and under section 1260 of the Penal Code, it is not necessary that those issues be retried.
 The error here is analogous to an error in sentence. [12] It is the established practice of this court not to reverse and remand for a new trial on all issues when the impelling error relates only to the sentence pronounced. (See e.g., People v. Carrow (1929), 207 Cal. 366, 369 [278 P. 857]; People v. Eppinger (1895), 109 Cal. 294, 298 [41 P. 1037]; People v. d'A Philippo (1934), 220 Cal. 620, 629 [32 P.2d 962]; People v. Murray (1940), 42 Cal.App.2d 209, 220 [108 P.2d 748]; People v. McChesney (1940), 39 Cal.App.2d 36, 42 [102 P.2d 455]; People v. Hayes (1934), 3 Cal.App.2d 59, 64 [39 P.2d 213]; People v. Foster (1934), 3 Cal.App.2d 35, 42 [39 P.2d 271]; People v. Arnest (1933), 133 Cal.App. 114, 123-124 [23 P.2d 812]; People v. Darling (1932), 120 Cal.App. 453, 456 [7 P.2d 1094]; People v. Willison (1931), 116 Cal.App. 157, 161 [2 P.2d 543].) [13] The crime of which the defendant has been convicted is murder in the first *233 degree. Every element of that offense has been proven and in respect to every element of that offense the defendant has been accorded a fair trial. The verdict which was returned embraces "two necessary constituent elements; first, a finding that the accused is guilty of murder in the first degree, and, secondly, legal evidence that the jury has fixed the penalty." (People v. Hall (1926), supra, 199 Cal. 451, 456.) The error, as above shown, relates only to the selection of penalty and, hence, affects only the question of sentence, not the determination of guilt of the basic offense.
 In People v. Morton (1953), 41 Cal.2d 536, 543 [261 P.2d 523], this court considered the propriety of ordering a limited new trial on the issue of a prior conviction, an issue which, obviously, related only to punishment. Speaking through Mr. Justice Traynor, we held: "There is nothing prejudicial involved in a limited new trial on the issue of the challenged prior conviction by a jury different from that which tried the issue of guilt of the primary offenses. That issue and the proof of prior convictions are clearly severable." Here, although the evidence which proved guilt is also relevant to the question of penalty, it is obvious that we may say in the circumstances of this case, paraphrasing the language of the Morton case, that "there is nothing prejudicial involved in a limited new trial on the issue of the penalty to be imposed by a jury different from that which tried the issue of guilt"; such limited new trial before a different jury cannot possibly be prejudicial to the defendant because the first jury found him guilty of murder in the first degree notwithstanding the instruction that "If you find the defendant guilty of first degree murder and do not find extenuating facts or circumstances to lighten the punishment it is your duty to find a verdict of murder in the first degree and fix the penalty at death." The natural effect of that instruction, in the absence of extenuating facts or circumstances--and, impliedly, the jury found none--must have been deterrent rather than impellent to the finding that the defendant was guilty of murder in the first degree. The erroneous instruction could have been prejudicial only in respect to the penalty. Although the fixing of the penalty is normally one of the "two necessary constituent elements" of the verdict it involves a determination which is clearly separate and distinct from the determination of guilt. Upon the limited new trial the erroneous instruction will not be given. Thus this defendant will have had at the first trial the presumably favorable *234 influence of the erroneous instruction insofar as it conceivably could have had any effect in determining the class and degree of the offense, and upon the limited new trial as to penalty he will have the benefit of an instruction committing the question of penalty to the absolute discretion of the jury in accord with the statute and the views hereinabove expressed.
 In People v. Marshall (1930), 209 Cal. 540, 547 [289 P. 629], this court, in disposing of the contention that a reversal in part necessitated a complete trial de novo, said (adopting an opinion of the District Court of Appeal): "A trial on the issues presented by a plea of 'not guilty' and a plea of 'not guilty by reason of insanity,' under the provisions of section 1026 of the Penal Code, constitutes but one trial. ... The next point urged is that the appellate court had no power to reverse this case without either ordering a retrial of all the issues or a dismissal of the case, and that there should have been a trial de novo. The order made on the previous appeal is as follows: 'The judgment is reversed and the case remanded for trial upon the issue presented by the special plea.' Appellant argues that since no pleas are denominated special pleas by statute, all being equally general and equally special, the appellate court intended to order a trial de novo on all pleas. We think it is clear that the order of that court was to have the case completed on the one issue only (the question of insanity), and not to have all of the issues retried. It is further argued that if a new trial from the beginning was not ordered, the defendant must be discharged. Section 1260 of the Penal Code provides:"
 " 'The court may reverse, affirm, or modify the judgment or order appealed from, and may set aside, affirm or modify any or all of the proceedings subsequent to, or dependent upon, such judgment or order, and may, if proper, order a new trial.'"
 "Under the power here given to modify a judgment or order, the court may reverse in part and affirm in part ... The court here did not disturb the verdict in the first of two necessary steps which constitutes but one trial. On the contrary, the court held there were no errors of law in the proceedings up to and including that verdict. It was held that since the verdict was not yet complete the trial court had no power to pronounce judgment and sentence and the case was sent back to be completed. It was then the duty of the trial court to proceed, as should have been done in the first instance, *235 to a hearing on the remaining issue. The appellate court had the power to remand the case to the trial court for proper action." (See also People v. Eggers (1947), 30 Cal.2d 676, 691 [185 P.2d 1]; People v. Carrow (1929), supra, 207 Cal. 366, 369; People v. Dillon (1924), 68 Cal.App. 457, 478 [229 P. 974]; Ballew v. United States (1895), 160 U.S. 187, 203 [16 S.Ct. 263, 40 L.Ed. 388]; In re Bonner (1893), 151 U.S. 242, 262 [14 S.Ct. 323, 38 L.Ed. 149].) [14] Inasmuch as the original sentence is set aside at the behest of the defendant it cannot be successfully pleaded as constituting former jeopardy and there is no denial of due process. (People v. d'A Philippo (1934), 140 Cal.App. 236, 238 [35 P.2d 134]; certiorari denied, Philippo v. California (1934), 293 U.S. 614 [55 S.Ct. 149, 79 L.Ed. 704].)
 [15] In some situations of error related solely to the question of punishment, that error could be corrected by the appellate court's reducing the punishment, but that cannot be done here [fn. 6] because under the pertinent statutes as construed by this court the trier of fact is vested with exclusive discretion to determine punishment (see People v. Odle (1951), 37 Cal.2d 52, 57-58 [230 P.2d 345]; People v. Thomas (1951), 37 Cal.2d 74, 77- 78 [230 P.2d 351]). We note that in People v. Pantages (1931), 212 Cal. 237, 270 [297 P. 890] (a statutory rape case), the jury's selection of punishment is referred to as an "inseparable part of the verdict" but it is obvious that such reference in its context has no bearing on the separation of the question of punishment from the *236 properly decided issues in the case in a situation such as that now before us.
 [16] There arises the question of the character of the evidence to be received on the limited new trial for the determination of punishment. Where the question (together with that of the degree of the crime) is determined by the court on defendant's plea of guilty to a charge of murder, the hearing "is not a trial in the full technical sense, and is not governed by the same strict rules of procedure as a trial," and the court in aggravation or mitigation of the offense may consider matters not admissible on the issue of guilt (People v. Gilbert (1943), 22 Cal.2d 522, 528 [140 P.2d 9]; People v. Thomas (1951), supra, 37 Cal.2d 74, 76- 77), although the determination must be made upon "competent evidence" (People v. Mendez (1945), 27 Cal.2d 20, 23 [161 P.2d 929]). Where the matter is to be determined by a jury, however, it would appear that the proceeding should be "a trial in the full technical sense, and ... governed by the same ... rules of procedure" as the trial of the issue of guilt.
 For the reasons above stated the judgment and order denying a new trial are affirmed insofar as relates to the adjudication that defendant is guilty of murder and that the murder is of the first degree, but on the question of penalty the judgment and order denying new trial are reversed and the cause is remanded for retrial and redetermination of such question of penalty only, and for the pronouncement of a new sentence and judgment in accord with such determination and the law thereunto applicable. (See People v. Barnett (1946), 27 Cal.2d 649, 658-659 [166 P.2d 4].)
 Carter, J., Traynor, J., and McComb, J., concurred.
 SPENCE, J.,
 Concurring and Dissenting.
 I concur insofar as the judgment and order are affirmed, but I dissent insofar as the judgment and order are reversed.
 The majority orders a partial reversal "on the question of penalty" and remands the cause "for retrial and redetermination of such question of penalty only." Such partial reversal is based solely upon alleged prejudicial error in the giving of the instruction quoted in the majority opinion.
 As recently as 1954 the same instruction was held to be "not erroneous" in People v. Byrd, 42 Cal.2d 200, 210 [266 P.2d 505]. That decision was based upon a similar holding by this court in 1948 in People v. Williams, 32 Cal.2d 78, *237 85-86 [195 P.2d 393], where the entire subject was exhaustively discussed. It would thus appear that the precise question presented here has been settled by the decisions of this court, and that a wholesome regard for the doctrine of stare decisis should dictate an affirmance here.
 The majority opinion, however, discusses certain erroneous statements found in some of the earlier decisions and suggests that the same "idea" is embraced in the instructions given here. Such is not the case. This suggestion might be urged more plausibly with respect to the instruction given in People v. Lindley, 26 Cal.2d 780, 794 [161 P.2d 227], which contained further and broader language indicating that the jury might leave to the law "the responsibility of affixing the punishment." In that case Mr. Justice Schauer joined the majority in holding that the giving of such broader instruction "does not constitute error." There was no dissent in that case. Mr. Justice Traynor wrote a special concurring opinion but joined in affirming the judgment. No language similar to the above-quoted language of the Lindley instruction is found in the challenged instruction here. On the contrary, the challenged instruction is the identical instruction which was given in People v. Byrd, supra, 42 Cal.2d 200, 210, and which was approved by this court only two years ago.
 It would serve no useful purpose to review all the cases cited in the majority opinion. Any erroneous statements in the earlier cases which may have indicated that the jury was not required to agree unanimously upon the punishment were finally set at rest in 1926 by the opinion written by Mr. Justice Shenk in People v. Hall, 199 Cal. 451 [249 P. 859]. The jury there brought in a verdict finding the defendant guilty of murder in the first degree but added "But cannot come to an unanimous agreement as to degree of punishment." The trial court received the verdict and sentenced the defendant to suffer the death penalty. This court properly reversed the judgment, holding that the jury must agree unanimously upon the punishment. No subsequent decision has contained any language indicating that a jury is not required so to agree, and no such point is urged by respondent here. In fact, it is conceded by all that the jury did unanimously agree upon the verdict, which expressly provided for the death penalty.
 Therefore the matter for decision here is not whether the language contained in some of the earlier cases and relating *238 to a different problem should be overruled or disapproved, but whether the decisions of this court involving precisely the same problem should be followed. The basic question, which is one of statutory construction, may be stated as follows: Should the jury be instructed in effect that it has an absolute and unbridled discretion in fixing the punishment for first degree murder or should it be instructed that its discretion is a legal discretion which may not be arbitrarily exercised? In other words, should or should not the jury be instructed that the choice of the penalty should depend upon whether the jury finds "extenuating facts and circumstances" in the particular case? If the question were an open one, a plausible argument could be made for either construction. But the question is not an open one, at least with respect to the propriety of the particular instruction given here, and I find no sound reason for overruling our recent decision in People v. Byrd, supra, 42 Cal.2d 200. It is significant that the instruction given here appears to embrace only the considerations which would influence the decision of any reasonable juror in fixing the penalty, and that the broad implications of the term "extenuating facts or circumstances" allow a wide range for the exercise of the juror's discretion. I am therefore of the opinion that upon reason and authority, there was no error in the giving of the challenged instruction.
 I would affirm in toto the judgment and order denying a new trial.
 Gibson, C.J., and Shenk, J., concurred.
NOTES
[fn. 1] 1. There is evidence that defendant served three years in a Florida penitentiary for a previous conviction of felony.
[fn. 2] 2. The 1874 amendment was approved March 28, 1874, and took effect from the date of passage; the trial took place in May, 1874 [pp. 175, 176 of 49 Cal.].
[fn. 3] 3. This erroneous and unfortunate reasoning also furnishes the basis for the often indulged practice (which up to this time has been tolerated) of instructing juries that verdicts which are "silent" in respect to punishment will be interpreted as meaning that the death penalty is implied. Commendably, the learned trial judge in this case properly required the jury to specifically state in their verdict which penalty was to be imposed. (See also People v. French (1886), 69 Cal. 169, 176-180 [10 P. 378]; 36 Cal.L.Rev. 632-634; cf. People v. Green (1932), 217 Cal. 176, 177, 184 [17 P.2d 730].)
[fn. 4] 4. Statements to the effect that there must be mitigating circumstances to warrant life imprisonment also appear in the following cases which do not concern the correctness of instructions to the jury: People v. Rollins (1919), 179 Cal. 793, 796 [179 P. 209]; People v. Lininger (1941), 17 Cal.2d 851, 852 [112 P.2d 626] [comment of trial judge where defendant pleaded guilty and judge fixed penalty].
[fn. 5] 5. Statements to the effect that it is "the law" rather than the jury which has the responsibility of fixing the penalty where a verdict of guilty of first degree murder is silent as to penalty also appear in People v. Adams (1926), 199 Cal. 361, 366 [249 P. 186]; People v. La Verne (1931), 212 Cal. 29, 32 [297 P. 561]; People v. Farrington (1931), 213 Cal. 459, 466 [2 P.2d 814]; People v. Farolan (1931), 214 Cal. 396, 397 [5 P.2d 893]; People v. Perry (1939), 14 Cal.2d 387, 392 [94 P.2d 559, 124 A.L.R. 1123]; see People v. Hoyt (1942), 20 Cal.2d 306, 317 [125 P.2d 29].
[fn. 6] 6. In other jurisdictions it has been held that where there was error affecting only the fixing of the penalty by the jury, the error can be cured by the reviewing court modifying the judgment of the lower court to reduce the punishment to life imprisonment. (Cook v. State (1929), 179 Ark. 244 [15 S.W.2d 323, 324] [the error so "cured" was the failure to instruct the jury that it had the right to impose either the death penalty or the penalty of life imprisonment]; State v. Ramirez (1921), 34 Idaho 623 [203 P. 279, 29 A.L.R. 297] [the statute provided that "the jury may decide which punishment shall be inflicted"; the appellate court said that the Legislature "is without authority to clothe the jury with the exclusive right to fix the extent of the punishment, this being a judicial act" (p. 283 of 203 P.); "We perceive no logical reason why ..., in a case where there was error in the record, but not of such a character as to warrant a reversal, in order to avoid the imposition of the extreme penalty when not warranted by the evidence, this court should be put to the alternative of reversing the judgment nevertheless or of permitting injustice to be done" (p. 282 of 203 P.)]; O'Hearn v. State (1907), 79 Neb. 513 [113 N.W. 130, 25 L.R.A.N.S. 542] [the statute provided that defendant suffer death or life imprisonment "in the discretion of the jury"; the appellate court reduced the penalty because of errors in the admission of evidence which did not require reversal but probably influenced the jury in choice of penalty].)